Goldie **LA BOVE**, also known as Gussie LaBove, Plaintiff,

v.

**METROPOLITAN LIFE INSURANCE COMPANY**, a corporation, and Francine Kasser, a minor, Defendants.

Civ. No. 962–57.

United States District Court
D. New Jersey.
July 30, 1958.

Carroll, Taylor & Bischoff, Camden, N. J., by William G. Bischoff, Camden, N. J., for plaintiff.

W. Louis Bossle, Camden, N. J., for defendant, Francine Kasser.

Starr, Summerill & Davis, Camden, N. J., by Edgar E. Moss, III, Camden, N. J., for defendant, Metropolitan Life Ins. Co.

MADDEN, District Judge.

This is an action instituted by the plaintiff, Goldie LaBove, also known as Gussie LaBove, to recover the proceeds of a group life insurance policy issued under the provisions of the Federal Employees' Group Life Insurance Act,[1] 5 U.S.C.A. § 2091 et seq., by the defendant, Metropolitan Life Insurance Company, upon her son, Harry LaBove, an employee of the Federal Security Administration, Department of Health, Education and Welfare.

Defendant, Metropolitan, answered and counterclaimed for interpleader making as an additional defendant, Francine Kasser, the natural born daughter of Harry LaBove. The interpleader having been allowed, the proceeds were deposited with the Court. Accordingly, Francine, a minor, appeared through her guardian, Bucks County Bank & Trust Company, and asserted her claim to said proceeds.

1. Aug. 17, 1954, c. 752, § 4, 68 Stat. 738.

The facts in this matter are not in dispute and may be summarized, as follows:

Harry LaBove, a member of the bar of New Jersey, married Edith LaBove in April, 1943; the only child born of this marriage is the defendant, Francine, who was born on July 13, 1944. On July 17, 1948, Harry LaBove and Edith LaBove were divorced. Edith LaBove then married Sidney Kasser on June 7, 1949, and the defendant, Francine, took the residence of her mother and stepfather. On January 20, 1950, the Camden County Court (State of New Jersey) entered a decree of adoption upon the petition of Sidney and Edith Kasser to adopt Francine LaBove and change her name to Francine Kasser. This was accomplished with the written consent of the father, Harry LaBove.

The insured, Harry LaBove, executed a last will and testament, dated March 4, 1950, wherein he named the plaintiff, his mother, sole beneficiary of his estate, expressly noting, however, that he was mindful that he had a child, Francine, now adopted by Sidney and Edith Kasser.

In August, 1954, Congress passed the Federal Employees' Group Life Insurance Act, supra, and in November, 1954, a policy was issued by the defendant, Metropolitan, covering Harry LaBove, effective as of August 29, 1954. Harry LaBove died February 4, 1957, not having specifically designated a beneficiary of such policy under the provisions of the Act (Section 2093). And, on February 20, 1957, his will was probated and filed in the Office of the Surrogate of Camden County.

The plaintiff in this action claims that she is entitled to the proceeds of the policy on the basis of either one of two theories: First, that the will in effect constitutes a specific designation of her as the beneficiary of the policy; and, alternately, if the will does not constitute a designation of a beneficiary that Francine lost all legal rights flowing from her natural father, Harry LaBove, by reason of her adoption by Sidney and Edith

Kasser, and there being no widow, and no child of said insured, she, as mother of said insured, is next in the order of precedence entitled to the proceeds under Section 2093, hereinafter set forth:

"§ 2093. Death claims; order of payment

"Any amount of group life insurance and group accidental death insurance in force on any employee at the date of his death shall be paid, upon the establishment of a valid claim therefor, to the person or persons surviving at the date of his death, in the following order of precedence:

"First, to the beneficiary or beneficiaries as the employee may have designated by a writing received in the employing office prior to death;

"Second, if there be no such beneficiary, to the widow or widower of such employee;

"Third, if none of the above, to the child or children of such employee and descendants of deceased children by representation;

"Fourth, if none of the above, to the parents of such employee or the survivor of them."

The claim of the plaintiff is resisted in the claim of Francine who maintains that the will cannot constitute the specific designation of a beneficiary and that under the provisions of Section 2093, no designation having been made, and there being no widow, she, as the only child of the insured, is first in the order of precedence entitled to the proceeds.

■ I think it is quite clear that the will cannot be determined to constitute a designation of beneficiary under the provisions of the Act as the will was executed in 1950 (four years prior to the issuance of the policy) and makes no specific mention of said policy.

This seems to be the law as stated in Fratellanza Italiana v. Nugnes, 1933, 114 N.J.Eq. 185, 186, 168 A. 589, 590:

"Nugnes never designated any person or beneficiary, unless his last

will and testament can be considered such a designation. The will contains no mention of the complainant society or of the benefits accruing from membership therein and does not contain an express designation; it merely bequeaths and devises all of his property to his widow, Rose Nugnes, and names her executrix. The death benefit of $400 is not a part of the deceased member's estate and is not included in the bequest. While a member of a beneficial association may, by an apt clause in his will, effectively designate the beneficiary to receive the death benefit, a general bequest of his property is not sufficient to that end, since it does not show an intention that the legatee shall also be the beneficiary."

Furthermore, there is absolutely nothing in the record to indicate that after the issuance of the policy in 1954 the decedent made any affirmative act that could be interpreted as a designation by him of a beneficiary.

We, therefore, come to the question, is Francine, who has been adopted by her natural mother and stepfather, a "child" of Harry LaBove under Section 2093 of the Federal Employees' Group Life Insurance Act; if she is, then she has priority over the plaintiff-mother and is entitled to the proceeds, if not, then the plaintiff would recover.

To determine this question, we first must look to the controlling federal statute which establishes the rights of the respective parties hereto and the order of precedence thereof. Unfortunately, Congress has not defined the term "child" as employed in the context of the Act, and so this Court is confronted with the task of judicially construing said term as it applies to the particular facts and circumstances of the instant case. For guidance in this undertaking, we refer to the law of New Jersey to ascertain how the Courts of New Jersey have decided, or, failing that, would decide

the issue. Regarding the Federal Employees' Group Life Insurance Act, see Tatum v. Tatum, 9 Cir., 1957, 241 F.2d 401, at page 405, where the Court stated:

"The parties have assumed without discussion that the question of appellant's marital status is to be determined by the law of California. The answer is not that crystal clear. Firstly, we are dealing with the interpretation of a federal statute. Therefore, the question of what law is to govern is in the first instance for the Congress to answer. Here Congress has remained silent.

"Under similar conditions, the adjudicated National Service Life Insurance Act cases have produced differing conclusions. *One point of unanimity is that state law will govern. * * *.*" (Emphasis supplied.)

In 1953 the Legislature of New Jersey enacted a new statute governing adoptions within the state, N.J.S.A. 9:3–17 et seq.[2] The legal effect of an adoption under this Act is set forth in paragraph 14 (N.J.S.A. 9:3–30) which provides:

"9:3–30. Effect of adoption; relationships of parent and child; rights of inheritance

"A. The entry of a judgment of adoption shall terminate all relationships between the child and his parents, and shall terminate all rights, duties, and obligations of any person which are founded upon such relationships, including rights of inheritance under the intestate laws of this State; provided, however, that when the adopting parent is a stepfather or stepmother, and the adoption is consummated with the consent and approval of the mother or father, respectively, such adoption shall not affect or terminate any relationships between the child and such mother or father.

"B. The entry of a judgment of adoption shall establish the same re-

---

2. L.1953, c. 264, p. 1768, § 1 et seq.

lationships, rights, duties and obligations between the child and the adopting parent as if such child were born to such adopting parent in lawful wedlock. In applying the intestate laws of this State, an adopted child shall have the same rights of inheritance as if born to the adopting parent in lawful wedlock. In the construction of any testamentary or other document executed subsequent to the effective date of this act, an adopted child shall be deemed lawful issue of the adopting parent unless such document shall otherwise provide. L. 1953, c. 264, p. 1777, § 14."

The portion thereof which at first gave this Court difficulty is the proviso:

" * * * that when the adopting parent is a stepfather or stepmother, and the adoption is consummated with the consent and approval of the mother or father, respectively, such adoption shall not affect or terminate any relationships between the child and such mother or father."

However, after considerable deliberation the Court finds that only one interpretation can be placed upon such proviso; namely, that in order for the stepfather to petition the Court for the adoption his wife, the natural mother, must consent (see Section 9:3–21, N.J. S.A.) and this proviso thereby prevents her by her consent from being removed from her status of "mother" which the previous portion of the statute would do if it were not for such latter provision.

This then brings us to the direct impact of the legislative words, "The entry of a judgment of adoption shall terminate all relationships between the child and his parents, and shall terminate all rights, duties, and obligations of any person which are founded upon such relationships, including rights of inheritance under the intestate laws of this State."

Apparently the Legislature in its judgment felt that the changing socio-logical order, partially attributable to the increase in the rate of divorce of parents of minor children and the high percentage of remarriage of such divorced parents, called for legislative action. And they, by this Act, have attempted to unite into a single cohesive unit, a family upon sociological bases rather than upon natural or congenital ties, and thus, eliminate or avoid that division of authority so often apparent to a minor child between its natural parent and adopting step-parent.

Possibly this is better but the writer would have great hesitancy in attempting to disturb the natural order of things. However, ours is not the power to legislate but merely to adjudicate and in this particular case to adjudicate under the law as the Courts of New Jersey have or would have interpreted the Acts of the New Jersey Legislature.

In this regard we find that the Courts of New Jersey have spoken regarding this Act, as follows:

In re Wehrhane's Estate, 1957, 23 N.J. 205, 210, 128 A.2d 681, 683:

"At the hearing below expert opinion was offered to demonstrate that today societal regard for the family relationship is based upon sociological environment rather than biological connection, that the common impulse of our time is to accept adopted children into the same realm of family affinity as the natural born, suggesting thereby that the issue sub judice should be resolved in this light. Attention is invited to a rule of construction incorporated in L.1953, c. 264 (N.J. S.A. 9:3–30) which would presumptively include adopted children as lawful issue in all testamentary documents executed after the date of the enactment."

Page v. Johnson, Ch.Div.1957, 45 N.J. Super. 97, at page 105, 131 A.2d 522, at page 527:

"In 1953 all of chapter 3 of Title 9 was repealed and a wholly new adoption act for minor children was

adopted as L.1953, c. 264. (See N.J. S.A. 9:3–30.) This provides, in effect, that in applying the intestate law an adopted child shall have the same rights of inheritance as if born to the adopting parent in lawful wedlock; and that in construing any subsequent will or other document an adopted child shall be deemed lawful issue of the adopting parent unless the document provides otherwise."

Benedict v. New York Trust Co., Ch. Div.1958, 48 N.J.Super. 286, at page 289, 137 A.2d 446, at page 448:

"Granted that the present trend of the law is to eliminate as much as may be possible, the legal distinction between adopted children and natural born children * * *."

And in the Matter of Jacques, Ch.Div. 1958, 48 N.J.Super. 523, at page 534, 138 A.2d 581, at page 587:

" * * * It would be strange indeed to permit the adoption and not permit the child to take the surname of the adopting parents, especially since the usual effect of a judgment of adoption is to transfer from the natural parents to the adoptive parents the custody of the child's person, the duty of obedience owing by the child, and all other legal consequences and incidents of the natural relation, in the same manner as if the child had been born of such adopting parents in lawful wedlock."

If, therefore, the Courts have said that the legal distinction between natural born and adopted children has been removed, it would seem logical that they would say in the present case that the child cannot be the legal child of two fathers at the one and the same time; she is, therefore, the child for all legal purposes of the adopting father.

And if the Courts of New Jersey say that an adopted child is just the same to the adopting parents as though born in lawful wedlock, it would likewise seem to follow that legally one cannot be born to two sets of parents, and is, therefore, the child of the adopting parents.

This Court then, and not too happily I might add, concludes that under the law of New Jersey a father whose child is adopted by another loses all rights, duties and obligations towards such child and the child legally obtains a new father, in toto, likewise losing all rights, duties and obligations towards its natural father. As a result, this Court finds that the child, Francine Kasser, is not a legal child of the deceased, Harry LaBove, under the provisions of the Act, supra, and hence cannot be the beneficiary of the policy in question. This brings the mother-plaintiff next in line and she will be awarded the proceeds of said policy.

Counsel will prepare an appropriate order.