155 N.J. Super. 410 (1978)
382 A.2d 972
IN THE MATTER OF THE ESTATE OF HENRY M. NEUWIRTH, DECEASED.
Superior Court of New Jersey, Monmouth County Court, Probate Division.
January 11, 1978.
*415 Mr. Richard F. Lert for plaintiff Janet Neuwirth (Messrs. Wilentz, Goldman & Spitzer, attorneys).
Mr. John Warren, Jr. for defendant Gary Neuwirth (Messrs. Parsons, Canzona, Blair & Warren, attorneys).
*416 Mr. Charles L. Morgan for defendant Central Jersey Bank & Trust Company, guardian for David Neuwirth (Messrs. Morgan & Falvo, attorneys).
Mr. Robert V. Carton for defendant Sanford O. Kelly (Messrs. Carton, Nary, Witt & Arvanitis, attorneys).
LANE, A.J.S.C. (temporarily assigned).
This matter is before the court on motion for summary judgment by Janet Neuwirth, administratrix of the estate of Henry M. Neuwirth, to determine whether Sanford O. Kelly has any interest in the estate.
Henry M. Neuwirth married Phyllis Gifford in New Jersey on December 6, 1949. On August 18, 1950 Sanford Owen Neuwirth was born of the marriage in New Jersey. On June 30, 1952 Mrs. Neuwirth obtained a divorce for extreme cruelty in the Superior Court of New Jersey, Chancery Division, Monmouth County. The judgment nisi granted custody of Sanford to the mother. No provision was made for visitation or support. Shortly after the divorce Mrs. Neuwirth and Sanford moved to Florida. In 1954 she married Francis J. Kelly in Florida. By a decree of the Circuit Court for Brevard County, Florida, dated January 25, 1961, Mr. Kelly adopted Sanford. The decree changed Sanford's name to Sanford Owen Kelly. So far as any of the parties before the court know, Sanford had no contacts with his natural father after the divorce.
Henry Neuwirth remarried, had two children and remained in New Jersey where he died intestate on July 28, 1973. In the complaint for administration the widow, plaintiff in this action, named Sanford O. Neuwirth as a possible heir. After almost two years Sanford O. Kelly, formerly Sanford O. Neuwirth, was located in Texas. The widow now moves for summary judgment declaring that Sanford O. Kelly has no right to inherit from his natural father's estate.
Resolution of this motion involves no disputed factual issues. The answer depends on whether the law of New Jersey *417 or the law of Florida governs Kelly's right to inherit from his natural father, whether the Florida adoption is cognizable in New Jersey and whether the law to be applied is the law at the time of death or the law at the time of adoption.
Adoption was unknown at common law. The legal relationships which result from adoption are purely statutory in origin. Gardner v. Hall, 132 N.J. Eq. 64, 68 (Ch. 1942), aff'd o.b., 133 N.J. Eq. 287 (E. & A. 1943); In re Book's Will, 89 N.J. Eq. 509, 512 (Prerog. 1918), rev'd o.o.g. 90 N.J. Eq. 549 (E. & A. 1919); Silberman, "Adoption in New Jersey  An Analysis of Its Legal Effects and Consequences," 1 Rutg. L. Rev. 250, 251 (1947) [hereinafter cited as 1 Rutgers]; Note, "Survey of New Jersey Adoption Law," 16 Rutg. L. Rev. 379 (1962) [hereinafter cited as 16 Rutgers].
Under the Full Faith and Credit Clause state courts are not required to give effect to adoption decrees of other states where the effect of the decree entitles the adoptee to inherit real estate. Hood v. McGehee, 237 U.S. 611, 615, 35 S.Ct. 718, 59 L.Ed. 1144 (1915). New Jersey originally adopted the minority position that children adopted in a sister state cannot inherit real property located in New Jersey. Frey v. Nielson, 99 N.J. Eq. 135, 137 (Ch. 1926). Such adopted children could, however, inherit personalty from a New Jersey decedent. In re Estate of Finkenzeller, 105 N.J. Eq. 44, 48-49 (Prerog. 1929), aff'd o.b. 107 N.J. Eq. 180 (E. & A. 1930). Frey v. Nielson, supra, was sharply criticized as the climax of incomity. Note, "Adoption  Conflicts  Descent and Distribution," 5 Rutg. L. Rev. 423, 425 (1950). The case was specifically overruled in Greaves v. Fogel, 12 N.J. Super. 5, 10 (App. Div. 1951), rev'g 9 N.J. Super. 301, 307 (Ch. Div. 1950). See also, Zanzonico v. Neeld, 17 N.J. 490, 495 (1955) (rejecting the provincial approach of Frey). New Jersey courts now give effect to a foreign adoption decree on the conditions that the foreign court had jurisdiction to fix the status of the child and that *418 recognition of the adoption does not offend public policy. Zanzonico v. Neeld, supra, 17 N.J. at 495. Procedural and substantive differences in adoption law do not prevent recognition of a foreign adoption decree as long as a genuine familial relationship existed between the adoptee and the adoptive parents. Id. at 497-498.
The majority rule is, and all parties agree, that the law which governs the inheritance rights of an adopted child is the law where the right arises rather than the law of the state of adoption. Page v. Johnson, 45 N.J. Super. 97, 102 (Ch. Div. 1957); Fidelity Union Trust v. Potter, 8 N.J. Super. 533, 538-539 (Ch. Div. 1950); Arciero v. Hager, 397 S.W.2d 50, 51 (Ky. Ct. App. 1965); Restatement, Conflict of Laws 2d, § 238 at 46 (1971); Comment, "The Inadequacy of Domicile as a Jurisdictional Base in Adoption Proceedings," 17 Rutg. L. Rev. 761, 783 (1963) [hereinafter cited as 17 Rutgers]. While the courts of the situs of land or decedent's domiciliary state at death look to their own local law to determine whether an adopted child can inherit, Restatement, Conflict of Laws 2d, § 238 (1) at 46, Id., § 262(1) at 119, the validity of the adoption is determined by looking to the law where the adoption was granted if the state of adoption would do the same. Restatement, Conflict of Laws 2d, § 238(2) at 46; Comment (b) at 47; Id, § 289 at 264.
The Restatement, Conflict of Laws 2d, § 290, describes the incidents of a foreign adoption:
An adoption rendered in a state having judicial jurisdiction * * * will usually be given the same effect in another state as is given by the other state to a decree of adoption rendered by its own courts. [at 288]
It is clear that the law of New Jersey governs the right of Sanford Kelly to inherit from his natural father. The central legal issues in dispute are whether the adoption decree should be recognized and whether New Jersey law *419 which governs Kelly's rights is the law effective at the date of the adoption or the law effective at the time of death.
Kelly collaterally attacks the Florida adoption decree for the limited purpose of restricting the effect of the decree on his right to inherit from his natural father. He argues that recognition of the Florida adoption offends public policy of this State in that the natural father had no notice and did not consent to the adoption.
There is no doubt that due process requires that a natural parent be given notice and opportunity to be heard before being deprived of parental rights through an adoption proceeding. Armstrong v. Manzo, 380 U.S. 545, 549-552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); Fielding v. Highsmith, 152 Fla. 837, 839, 13 So.2d 208, 209 (Sup. Ct. 1943) (en banc). This principle applies whether the natural parent is a resident or a nonresident of the forum state. Olney v. Gordon, 240 Ark. 807, 810, 402 S.W.2d 651, 653 (Sup. Ct. 1966); Stubbs v. Hammond, 257 Iowa 1071, 1075, 135 N.W.2d 540, 543 (Sup. Ct. 1965). Cf. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 319, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (notice to nonresident trust beneficiaries required). It is also fundamental that Fourteenth Amendment rights are personal rights, Shelley v. Kraemer, 334 U.S. 1, 22, 68 S.Ct. 836, 92 L.Ed. 1161 (1948) and that ordinarily a person has no standing to vindicate the rights of a third party, Barrows v. Jackson, 346 U.S. 249, 255, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), or to seek judicial redress in respect to a matter in which he is without interest, right or duty. Baxter v. Baxter, 43 N.J. Eq. 82, 86 (Ch. 1887), aff'd o.b. 44 N.J. Eq. 298 (E. & A. 1888); Newark Twentieth Century Taxicab Ass'n v. Lerner, 11 N.J. Super. 363, 366 (Ch. Div. 1951). Where the rights of a third party are likely to be diluted or adversely affected unless they are raised in a suit by one standing in a confidential relationship to the third party, there is standing to raise those rights. Griswold v. Connecticut, 381 U.S. 479, 481, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).
*420 Some courts have held that a child can collaterally attack an adoption decree when the natural parents were not notified of the proceedings. In re Smith's Estate, 86 Cal. App.2d 456, 467, 195 P.2d 842, 849 (D. Ct. App. 1948) (dictum); In re Hampton's Estate, 55 Cal. App.2d 543, 550, 131 P.2d 565, 570 (D. Ct. App. 1942) (following Smith); St. Louis Union Trust Co. v. Kaltenbach, 353 Mo. 1114, 1122, 186 S.W.2d 578, 583 (Sup. Ct. 1945). The defect must appear affirmatively on the face of the record, and the burden is on the challenger to show that notice was inadequate in the circumstances. In re Hampton's Estate, supra, 55 Cal. App.2d at 552, 131 P.2d at 571; In re Smith's Estate, supra, 86 Cal. App.2d at 467, 195 P.2d at 849.
Despite Kelly's ironical position in asserting his natural father's right to notice, it will be assumed that collateral attack is permissible.
Unless there is a plain usurpation of power by a court as assessed in the light of circumstances prevailing at the time of judgment, an unappealed civil judgment is not void. State v. American Can Co., 42 N.J. 32, 38, cert. den. 379 U.S. 826, 85 S.Ct. 53, 13 L.Ed.2d 36 (1964). Lack of personal or subject matter jurisdiction and fraud are the only grounds on which a foreign judgment can be collaterally attacked. Nat'l Surety Co. v. Mulligan, 105 N.J.L. 336, 341 (E. & A. 1929). The claim of fraud consisting of denial of a reasonable opportunity to be heard must be one which would be entertained by the foreign court which rendered judgment. Zelek v. Brosseau, 47 N.J. Super. 521 (App. Div. 1957), aff'd 26 N.J. 501, 502 (1958); Puzio v. Puzio, 57 N.J. Super. 557, 570, 574 (App. Div. 1959). See also, Essanay Film Mfg. Co. v. Kane, 258 U.S. 358, 362, 42 S.Ct. 318, 66 L.Ed. 658 (1922). Where fraud is alleged, it must be supported by clear and convincing proof. Boorstein v. Boorstein, 139 N.J. Eq. 274, 277 (E. & A. 1946). Where a supporting affidavit is statutorily required before entry of default judgment, the affidavit is presumed *421 to have been filed even though it does not appear on the record. Dean v. Thatcher, 32 N.J.L. 470, 473 (E. & A. 1865). Extrinsic evidence is admissible to challenge a sheriff's return on a summons. James v. Francesco, 61 N.J. 480, 485 (1972); Patterson v. Taylor, 78 N.J.L. 10, 12 (Sup. Ct. 1909).
In determining whether the Florida adoption is valid under Florida law, a New Jersey court must look to the requirements of Florida law if Florida in similar situations would look to a sister State's law. In Wright v. Brown, 146 Fla. 572, 574, 1 So.2d 871 (Sup. Ct. 1941), the Florida Supreme Court determined the right of an intestate's adopted child to inherit considering whether the Michigan adoption was in substantial compliance with Michigan law. Cf. Ross v. Mather, 114 Fla. 779, 154 So. 194 (Sup. Ct. 1934) (collateral attack on adoption decree where natural mother had not been noticed or had not consented limited to determination of whether there was substantial compliance with adoption statute). The inquiry is, therefore, whether the Florida decree was in substantial compliance with Florida law as to personal and subject matter jurisdiction. An adoption decree with a valid jurisdictional basis is unassailable in other circumstances. Restatement, Conflict of Laws 2d § 78, Comment (b) at 235. Fla. Stat. § 72.30 provides that irregularities or procedural defects in adoption decrees shall be deemed cured after two years of entry of the final decree, and adoption decrees shall not be subject to direct or collateral attack by reason of such defect or irregularity.
Adoption has been described as an in rem proceeding, A. v. M., 74 N.J. Super. 104, 109 (Cty. Ct. 1962); 16 Rutgers, supra at 381; 1 Rutgers, supra at 265, with the res being the domestic status of the parties to the proceeding. The issue of whether New Jersey has jurisdiction in an adoption proceeding where the natural father of a potential adoptee is domiciled in another state was answered only after the court in A. v. M. wrote at length on the subject. Since the domicile of the child follows that of the natural father, *422 Yarborough v. Yarborough, 290 U.S. 202, 211, 54 S.Ct. 181, 78 L.Ed. 269 (1933); A. v. M., supra, 74 N.J. Super. at 110; Restatement, Conflict of Laws 2d, § 14 at 59, the potential adoptee is not domiciled in the state of the adoption proceeding where the natural father lives in another state. Early statutory adoption schemes required unity of domicile; all parties, including the natural parents, had to be domiciled in the state where the adoption proceedings were brought. 17 Rutgers, supra, at 763. This rigid and impractical concept of jurisdiction was eventually discarded in favor of recognition of the domicile of either the child or the adoptive parents. Restatement, Conflict of Laws, 2d, § 78 at 235 states:
A state has power to exercise judicial jurisdiction to grant an adoption if
(a) it is the state of domicil of either the adopted child or the adoptive parent, and
(b) the adoptive parent and either the adopted child or the person having legal custody of the child are subject to its personal jurisdiction.
The Restatement view is the prevailing one and was adopted by the court in A. v. M., supra, 74 N.J. Super. at 118-119. See also, 7 N.J. Practice (Clapp, Wills & Administration), § 1599 at 300 (3 ed. 1962). The jurisdictional basis required by the Restatement is sufficient to grant a valid adoption. Kelly's mother was his legal custodian at the time of the adoption proceedings. The Florida court had jurisdiction over Kelly's legal custodian and adoptive parent sufficient to grant the adoption. Fla. Stat. §§ 72.07, 72.11
Where consent of both natural parents is a prerequisite to a valid adoption, consent may also be considered jurisdictional. 2 C.J.S., Adoption of Persons, §§ 51, 57, 126 (1972). A Florida adoption decree is invalid against natural parents unless one of four alternative grounds has been met: (1) the natural parents consent to the adoption, Fla. Stat. §§ 72.12, 72.14; (2) the adoption is in the best *423 interests of the child and the natural parents who can be located with reasonable diligence have notice and an opportunity to be heard, Fielding v. Highsmith, supra, 152 Fla. at 839, 13 So.2d at 209; (3) the natural parents have been deprived of permanent custody by a competent court; (4) the child has been abandoned and notice has not been given because the location of the natural parents is unknown. Fielding v. Highsmith, supra, 152 Fla. at 839-840, 13 So.2d at 209-210. Permanently or indefinitely leaving a child with others without supporting the child is equivalent to abandonment. In re Adoption of Prangley, 122 So.2d 423, 428 (Fla. Ct. App. 1960).
Parental consent is not an absolute requirement for a valid Florida adoption and in that sense is not jurisdictional. Admittedly, the circuit court had subject matter jurisdiction. Fla. Stat. § 72.08.
The question arises whether the Florida adoption was in substantial compliance with Florida law.
Fla. Stat. § 72.13, in effect at the time of Kelly's adoption, provided in pertinent part:
In the absence of consent * * *, upon the filing of the petition, the clerk of the court wherein it is filed shall forthwith issue a notice directed to the natural parent or parents, or the legal guardian, commanding them to be and appear in said court * * *, and to show cause why said petition should not be granted.

* * * * * * * *
If any person named in said notice be alleged to be a nonresident of Florida, or if the name or residence or whereabouts of any such person is alleged to be unknown, or if any such person cannot be personally served, the clerk shall cause such notice to be published once each week for four consecutive weeks (four publications being sufficient) prior to the return day, in some newspaper published in the county, which notice shall show the filing of said petition for adoption of such child. The clerk shall mail a copy of such notice to every such nonresident person at his place of residence as shown in the petition. The clerk shall file a certificate of constructive service, and thereupon such constructive service shall be as effectual as to persons who are nonresidents or whose names or residence or whereabouts are unknown, as if such persons had been personally served with process within this state, according to law. In the event *424 it is necessary to serve such notice by publication, it shall be shown either in the verified petition or in an affidavit attached thereto, that diligent search has been made by the petitioner or the petitioners to ascertain the names and places of residence, of the natural parent or parents, or legal guardian.
A docket entry of the Florida court which granted the adoption reveals that copies of the pleadings were mailed to Henry Neuwirth in Asbury Park, New Jersey. The adoption pleadings were returned to the Florida court with a notation that the addressee was unknown. Constructive notice by publication in a Florida newspaper was then given and default judgment was entered. It is not known whether diligent search to find the natural father was made or whether an affidavit to that effect was filed with the court. If such search was made and the natural father could not be located, constructive notice by publication would be acceptable. See Mullane v. Central Hanover Bank & Trust Co., supra, 339 U.S. at 319, 70 S.Ct. 652. Here, an effort was made to notify the adoptee's natural father. The record does not affirmatively show a constitutional violation. It is presumed that the proper affidavit was filed. See Dean v. Thatcher, supra, 32 N.J.L. at 473. The adoption is in substantial compliance with Florida law and establishes Kelly's status as an adopted child.
Kelly argues that the adoption offends New Jersey policy in that it was obtained without the consent of the natural father.
Consent of natural parents was the primary statutory ground for adoption. Abandonment became a substitute for consent where parental conduct reflected a settled purpose to repudiate parental status. Sees v. Baber, 74 N.J. 201, 211 (1977); Winans v. Luppies, 47 N.J. Eq. 302, 305 (E. & A. 1890). The concept of abandonment foreshadowed the 1953 statutory standard of "forsaken parental obligations." The procedural changes which occurred in the 1953 statutory revision did not nullify the basic rights of natural parents to adequate safeguards before being permanently *425 deprived of their natural children through adoption. In re Adoption of Children by N.M., 96 N.J. Super. 415, 423-425 (App. Div. 1967). In re Adoption of Children by D., 61 N.J. 89 (1972), presented principles to be applied where divorced parents and adoptions by second spouses are involved. Before a New Jersey court can consider the best interests of a child in determining whether to grant adoption, it must first determine that the nonconsenting natural parent has wilfully and continuously neglected or failed to perform the natural and regular obligations of care and support of the child. Id. at 92. This requires "a past course of conduct amounting to intended abandonment or very substantial neglect of both parental duties and claims, with no reasonable expectation of any reversal of that conduct in the near future." Id. at 94-95. A divorce based on the grounds of desertion is not sufficient to support a finding of abandonment. In re Adoption of a Child by E.M., 124 N.J. Super. 272, 273 (App. Div. 1973), certif. den., 64 N.J. 495 (1974). Likewise, a divorce on the grounds of adultery or extreme cruelty merely allows a court to find that the culpable parent has no further right to custody, N.J.S.A. 9:3-24(C), but does not justify a finding of abandonment. In re Adoption of Children of D., supra, 61 N.J. at 94.
In In re Adoption of Children by N.M., supra, 96 N.J. Super. at 423-425, the court stated that public policy requires that parental rights be safeguarded to the utmost and that all doubts should be resolved against destruction of the relationship between a natural parent and his child.
While it is true that consent of natural parents is strongly favored in this State, in the cases discussing the necessity of consent the natural parent whose relationship with the child would be severed by the adoption vehemently opposed the adoption. The policy in favor of maintaining natural relationships is inapplicable where, as here, over 20 years have passed since the natural father and child had contacts with each other and where the only result of preserving natural *426 ties would be to allow Kelly to inherit from his natural father. There is no disservice to public policy by recognizing the Florida adoption.
Does Kelly, who was adopted January 25, 1961, have a right to inherit under New Jersey law?
The first adoption statute was enacted in New Jersey in 1877. L. 1877, c. 83. Section 3 provided that the adoption decree shall adjudge "that from the date of such decree the rights, duties, privileges and relations theretofore existing between the child and his parent or parents shall be in all respects at an end, excepting the right of inheritance * * *." The statute was amended numerous times between 1877 and 1953. Although certain changes in rights of inheritance of the adopted child vis-a-vis the adoptive parents occurred, no change in the position of the adopted child in relation to inheritance from the natural parent resulted. A provision was added in 1939 which limited the effect of the changes in inheritance rights as to the adoptive parents to prospective operation only. L. 1939, c. 355, § 1. In 1952 a provision giving recognition to adoption decrees of sister states was added. L. 1952, c. 234, §§ 1, 2.
In 1953 the adoption statutes underwent a general revision and the prior statutes were repealed. L. 1953, c. 264, § 18. The 1953 statute changed the rights of an adopted child to inherit from the natural parent, providing:
The entry of a judgment of adoption shall terminate all relationships between the child and his parents, and shall terminate all rights, duties, and obligations of any person which are founded upon such relationships, including rights of inheritance under the intestate laws of this State; provided, however, that when the adopting parent is a stepfather or stepmother, and the adoption is consummated with the consent and approval of the mother or father, respectively, such adoption shall not affect or terminate any relationships between the child and such mother or father. [L. 1953, c. 264, § 14A, as enacted N.J.S.A. 9:3-30(A)]
The changes were effective January 1, 1954, L. 1953, c. 264, § 20, and had no retroactive effect. Nickell v. Gall, 49 *427 N.J. 186, 190 (1967). A savings clause specifically protected all rights acquired through previous adoptions. L. 1953, c. 264, § 18. Provisions of the prior law were allowed to apply to adoptions pending at the time of the effective date of the act. Id. § 14. The full faith and credit provision was not re-enacted.
The proviso in N.J.S.A. 9:3-30(A) as to the effect of an adoption upon the relationship between an adopted child and a natural parent where one adoptive parent is a stepparent makes the abolition of rights in the first part of the paragraph inapplicable where one of the adoptive parents is the child's natural parent. La Bove v. Metropolitan Life Ins. Co., 164 F. Supp. 808, 812 (D.N.J. 1958), aff'd 264 F.2d 233 (3d Cir.1959); In re Estate of Wolf, 93 N.J. Super. 83, 86 (Ch. Div. 1966), rev'd in part, 98 N.J. Super. 89 (App. Div. 1967). The 1953 statute absolutely severed the previous rights of an adopted child to inherit from the natural parent where the proviso was inapplicable. La Bove v. Metropolitan Life Ins. Co., supra, 164 F. Supp. at 812-813, 264 F.2d at 235; Nickell v. Gall, supra, 49 N.J. at 189; 16 Rutgers, supra at 396.
A 1966 amendment to N.J.S.A. 9:3-30(A) added words preserving the right of inheritance from the natural parent under the intestate laws. By this amendment the law of adoption was returned to the pre-1953 status  an adopted child retained the right to inherit from the natural parents. This amendment was effective on the date of enactment, July 21, 1966. L. 1966, c. 196, § 1. No legislative history accompanies the amendment.
New Jersey has adopted a minority position that the inheritance rights of an adopted child are determined by the law of adoption in effect at the time of the adoption. Nickell v. Gall, supra, 49 N.J. at 190; In re Estate of Wolf, 98 N.J. Super. at 93 (App. Div. 1967); 1 Rutgers, supra at 252. But see La Bove v. Metropolitan Life Ins. Co., supra, 164 F. Supp. at 812-813; 264 F.2d at 235; Gamble v. Cloud, 263 Ala. 336, 82 So. 2d 526, 527 (Sup. Ct. 1955); In re *428 Kenny's Estate, 129 Ind. App. 199, 205, 153 N.E.2d 607, 611 (Ct. App. 1958), aff'd sub nom. Kerlin v. Kenny, 239 Ind. 142, 143, 155 N.E.2d 389 (Sup. Ct. 1959); Arciero v. Hager, supra, 397 S.W.2d at 52; In re Loakes' Estate, 320 Mich. 674, 678, 32 N.W.2d 10, 12 (Sup. Ct. 1948); Page v. Johnson, supra, 45 N.J. Super. at 101, 106-107; Staley v. Honeyman, 59 Ohio L.O. 203, 98 N.E.2d 429, 430 (Ct. App. 1950), aff'd 157 Ohio St. 61, 62, 104 N.E.2d 172, 173 (Sup. Ct. 1952). Cf. Franklin v. White, 263 Ala. 223, 82 So.2d 247, 250 (Sup. Ct. 1955) (right of adoptive parent to inherit from adopted child governed by law in effect at time of child's death); Annotation, "What law, in point of time, governs inheritance from or through adopted person," 52 A.L.R.2d 1228, 1229 (1957) (unless contrary statutory intent, law in effect at date of death governs right to inherit from adopted child).
In Nickell v. Gall, supra, 49 N.J. 186, a child had been adopted in 1928 when the law allowed for inheritance from natural parents. The adoption decree preserved the rights of the child to inherit from the natural mother. In 1964, the natural mother died intestate. At the time of death, the adoption statute disallowed an adopted child's inheritance from natural parents. The court held that the law in effect at the time of the adoption determined the right of the adopted child to inherit despite the contrary proposition that inheritance laws speak only at the time of death. Id. at 189-190. The court grounded its ruling on three bases: (1) the adoption decree, upon which the natural mother might have relied, provided for inheritance; (2) applying the law in effect at date of death impaired the adopted child's financial interests, and (3) the 1953 legislation abolishing inheritance from natural parents contained a broad savings clause protecting the rights of prior adoptees. Id. at 191.
The court distinguished In re Holibaugh's Will, 18 N.J. 229, 235 (1955), in which the law in effect at the time of the adoptee's death was applied rather than the law in effect at the time of adoption, on the basis of the fact that the *429 adoption involved the right to inherit from an adult adoptee and did not affect the right of the adoptee to inherit. See N.J.S.A. 2A:22-3. While mentioning the contrary interpretation of applicable law in La Bove v. Metropolitan Life Ins. Co., supra, 264 F.2d at 235, that case was not specifically disapproved. The direct statement of the New Jersey Supreme Court is controlling.
In view of the court's distinction between rights of adoptees to inherit and rights to inherit from adopted persons, Kelly's contention that no real distinction exists must be rejected. Here, there is no adoption decree preserving claimant's right to inherit. The question is whether the Legislature intended the 1966 amendment to have retroactive effect. There are no extrinsic aids to which the court can look.
Provisions of an amendment are to be read in conjunction with the original act, 1A Sutherland, Statutory Construction, § 22.34 (1972). As the provisions of the 1953 act had no retroactive effect, the amendment is to be similarly applied. If the Legislature had repealed the 1953 provision, a different result could occur. Id. § 22.36. Unless there is an express legislative intent to the contrary, legislation is given prospective effect only. Skulski v. Nolan, 68 N.J. 179, 202 (1975); Nickell v. Gall, supra, 49 N.J. at 189; Kopczynski v. Camden Cty., 2 N.J. 419, 424 (1949). The legislative intention to give retrospective application to statutes must be clear, strong and imperative. Skulski v. Nolan, supra, 68 N.J. at 202, quoting Kopczynski v. Camden Cty., supra, 2 N.J. at 424. The Legislature did not intend to achieve symmetry by restoring the right to inherit from natural parents to persons adopted during the time when the adoption statute denied such rights.
Kelly relies on a footnote in In re Wolf, supra, 98 N.J. Super. at 93, n[*] [sic], in which the court discussed the 1966 amendment as "restoring to a child adopted by a stepparent the full right to inherit from both his natural parents under the intestate laws." Kelly argues that this footnote, which is completely dictum, is a dispositive interpretation of legislative *430 intent to give adoptees under the 1953 law the right to inherit from natural parents.
There are conflicting propositions, one requiring that the law in effect at the time of death governs intestate succession, a second applying the law at the time of adoption and a third requiring that legislation be given prospective operation only. Nickell v. Gall, supra, disposes of the question: the law in effect at the time of adoption governs. There is no legislative intent to the contrary, and equity does not sway the court either way. This result is not prompted by disfavor for "dual inheritance" from both natural and adoptive parents as expressed by some courts. See e.g., Wailes v. Curators of Central College, 363 Mo. 932, 937, 254 S.W.2d 645, 649 (Sup. Ct. 1953). Nor is the court unmindful of the position that inheritance statutes should be construed in favor of the adopted child. 2 C.J.S., Adoption of Persons, § 150 at 589. If equity is to be considered, giving a right to inherit to the adopted child reduces the share of the decedent's second family. Moreover, in a situation such as this, the decedent and his natural child had no contacts from the time of the parents' divorce when Kelly was only an infant.
In summary, Kelly's right to inherit from his natural father is determined by New Jersey law in effect at the time of the adoption. There is no disservice to public policy by recognizing the Florida adoption. Kelly has no right to inherit from Henry Neuwirth, having been adopted in the period of time when an adopted child's right to inherit from his natural parent was extinguished.