282 N.J. Super. 482 (1995)
660 A.2d 575
DAVID BEDNARSH, PLAINTIFF,
v.
CHARLOTTE BEDNARSH, DEFENDANT.
Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County.
Decided March 9, 1995.
*484 Victor A. Deutch, for plaintiff (Deutch, Shur & Falk, attorneys).
Jules S. Littman, for defendant.

OPINION
FISHER, J.S.C.

I

INTRODUCTION
The courts of the Family Part are often immersed in controversies over orders entered by the courts of other states. Congress recently sought to bring order to such interstate conflicts by enacting the Full Faith and Credit for Child Support Orders Act, 28 U.S.C. § 1738B. The parties to this case debate the application of this new federal law to an order recently entered by this court and another entered in Florida a year earlier.
Before the court is the motion of plaintiff David Bednarsh (plaintiff) for reconsideration of the court's order of December 6, 1994, and the motion of defendant Charlotte Bednarsh (defendant) for enforcement of that order, including the issuance of a bench warrant. At the heart of the matter is an order that was entered by the Florida Circuit Court (Sarasota County, Civil Division) on December 10, 1993 (the Florida order). Inexplicably, the Florida order was not part of the voluminous materials provided by the parties prior to the entry of the December 6, 1994 order.
*485 The Florida order was entered upon the agreement of the parties.[1] The parties stipulated that plaintiff owed defendant $18,000 in child support that had accumulated as of December 10, 1993. Plaintiff was ordered to pay $6,000 immediately and $250 per month against the balance of $12,000. The Florida court reserved jurisdiction "to enforce and/or modify" the order's terms.
Without knowledge of the Florida order, this court entered an order which paved the way for the payment of child support arrearages in excess of what the Florida court ordered.[2] Plaintiff now moves for reconsideration, and defendant seeks enforcement of the December 6 order.

II

THE MOTION FOR RECONSIDERATION

A. Timeliness

Defendant argues that the motion for reconsideration was tardily filed. The motion was filed more than ten days after the order was entered but that fact is generally irrelevant since the December 6 order was interlocutory. The order may be revisited any time prior to the entry of a final order. See R. 4:42-2 ("[An interlocutory order] shall be subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice...."); Johnson v. Cyklop Strapping Co., 220 N.J. Super. 250, 264, 531 A.2d 1078 (App.Div. 1987). Certainly, the ultimate goal of substantial justice would not be served by this court's refusal to review the December 6 order now that the Florida order has surfaced.

*486 B. Full Faith and Credit

The second prefatory issue that arose concerns the weight and influence to be given to the Florida order. Neither party mentioned the impact of the Full Faith and Credit for Child Support Orders Act (the Act), 28 U.S.C. § 1738B (enacted on October 20, 1994), until recently raised by the court. The Act expressly mandates the extent to which a state court should give deference to a child support order entered by a court of another state.
The Act compels a state court to "enforce according to its terms a child support order made consistently with this section by a court of another State" and forbids a state court from "seek[ing] or mak[ing] a modification of such an order except in accordance with [subsection (e) of the Act]." 28 U.S.C. § 1738B(a).
The Act is implicated by the present situation. Defendant is certainly correct that the Florida order merely resulted from defendant's attempts to enforce an earlier judgment entered by this court. Nevertheless, the Florida order involves "child support"[3] and constitutes a "child support order."[4] It is also indisputable that the Florida court had jurisdiction over the subject matter and the parties.
The multi-faceted purposes of the Act include the intent of Congress:
(1) to facilitate the enforcement of child support orders among the States;
(2) to discourage continuing interstate controversies over child support in the interest of greater financial stability and secure family relationships for the child; and
(3) to avoid jurisdictional competition and conflict among State courts in the establishment of child support orders.
*487 So long as the Florida order was "made consistently" with the Act, the Florida court retained "continuing, exclusive jurisdiction ... unless the court of another State" modifies it in accordance with subsection (e); if the order cannot be modified pursuant to subsection (e), another state court's sole obligation is to enforce the order so as to effectuate the purposes of the Act. To avoid "jurisdictional competition and conflict"[5] a court may only modify another state's child support order if the modification occurs in accordance with subsection (e) of the Act.
Subsection (e)[6] of the Act permits a modification of the Florida order only if two conditions are met. This court must, first, possess jurisdiction to enter a child support order. This court clearly does; defendant and the minor children are residents of New Jersey.
Second, one of two other conditions must be met. The first is met if Florida is no longer "the child's State or the residence of any contestant." Not so here; plaintiff resides in Florida. Thus, *488 the Florida order may be modified by this court only if the second condition is met: if "each contestant has filed written consent to the court's making the modification and assuming continuing, exclusive jurisdiction over the order." That is, since this court does have jurisdiction and Florida has not lost "continuing, exclusive jurisdiction," the order may not be modified unless the parties filed their "written consent" to modification.
As noted above, without knowledge of the Florida order, this court entered an order which, in part, clearly modified the Florida order. But, the Florida order has now stepped to the forefront and gives rise to two novel questions regarding the application of the Act: (1) do the circumstances by which this matter came to the court give rise to a conclusion that the parties filed their "written consent" to this court's modification of the Florida order?; and (2) do the circumstances surrounding the Florida order negate a finding that the Florida order was "made consistently" with the Act? Both questions are problematic since they require an examination into areas of the Act that appear, on first blush, to have gone unexplored by Congress.

1. Did the Parties Consent to this Court's Modification?

Leading up to the December 6, 1993 order neither party mentioned 28 U.S.C. § 1738B or the Florida order. The Act requires the filing of the parties' "written consent" prior to the latter court's modification of a child support order. The perplexing question that confronts the court is whether the absence of any mention of the Florida order in the prior moving, opposing and reply papers of these parties can be equated with their "written consent" to this court's exercise of exclusive, continuing jurisdiction over the issues referred to in the Florida order.
Resort to the express terms of the Act provides little guidance. Congress did not define what it meant by "written consent." Certainly consent cannot be given orally; but can it be given by a written submission which fails to refer to the child support order under circumstances which would appear to warrant its mention? Reams of paper went into the parties' earlier submissions and yet *489 neither party mentioned the Florida order (although plaintiff referred, with little description, to an earlier agreement[7]). The failure of both parties to mention previously the Florida order is inexcusable. But their mutual fault, despite all the familiar maxims about equity aiding the vigilant, should not lead to the disregarding of the Florida order. The Florida order's presence gives rise to jurisdictional problems which cannot be glossed over by the parties' lack of diligence or candor in presenting the procedural history to this court.
In this court's view, consent to a subsequent court's modification of another state's child support order should be found only upon a clear showing that the parties knowingly and voluntarily desired that result. Such an approach is consistent with the traditional common law caution as to the finding of a waiver of a right or a claim, see, e.g., Raroha v. Earle Finance Corp., 47 N.J. 229, 233, 220 A.2d 107 (1966), particularly in a domestic relations setting. See, e.g., Peskin v. Peskin, 271 N.J. Super. 261, 638 A.2d 849 (App.Div. 1994). Such caution is acutely required in light of the concern of Congress that the pre-Act environment led to "excessive relitigation of cases and to the establishment of conflicting orders by the courts of various jurisdictions, resulting in confusion, waste of judicial resources, disrespect for the courts, and a diminution of public confidence in the rule of law." Courts should view the "written consent" requirement strictly in order to insure that the problems recognized by Congress do not resurface.
Here, the only arguable basis for a finding of "written consent" lies with the fact that neither party disclosed to this court the existence of the Florida order. Silence has historically been equated with acquiescence.[8] Should plaintiff's failure to *490 speak of the Florida order, in the face of defendant's motion seeking arrearages in excess of what is contained in the Florida order, be equated with consent to the court's consideration of the issues notwithstanding the Florida order? After all, under those circumstances, one would expect to hear about the Florida order sooner than on the filing of a motion for reconsideration. Nevertheless, this court believes that the goals of the Act would not be served by giving such a connotation to this oversight, no matter how inexcusable. Without a clear, unequivocal and voluntary statement, based upon the parties' full understanding and complete knowledge of the intent, purpose and legal effect of their desire to have a court of another state assume continuing, exclusive jurisdiction over the matter, a subsequent court may not modify a child support order.

2. Was the Florida Order "Made Consistently" with the Act?

Defendant, in so many words, asserts that the Florida order was not "made consistently" with the Act because it was allegedly procured through the fraud of plaintiff. She avers that the agreement which led to the Florida order was based upon "the sworn deposition testimony of the plaintiff" in which he claimed a lesser income (and fewer assets) than defendant currently believes to be accurate. Charlotte Bednarsh Certification (January 1, 1995), ¶ 2A. Defendant claims that she did not learn of this alleged deception until after the agreement was reached. Ibid.
Whether fraud occurred, and whether it was a factor which brought about the agreement (and, a fortiori, a factor which brought about the Florida order), are questions of fact which cannot be resolved on the papers. The question of law which must be resolved, however, is whether a child support order which may have been procured through fraud is an order which was "made consistently" with the Act. Also, since fraud cannot be found or excluded on the papers, the selection of the court which should resolve that question is yet another perplexing question. *491 The express provisions of the Act do not provide clear answers to these questions.

(a) Is the Concept of Fraud A Basis for Declining to give a Foreign Order Full Faith and Credit under the Act?
The Act expressly states that a child support order is "made consistently" with the Act if the court that entered it has subject matter and personal jurisdiction over the parties, and the parties had "reasonable notice and opportunity to be heard." The quoted phrase is not defined by the Act.
Traditionally, it has been understood by the courts of this State that a foreign judgment is entitled to full faith and credit and may only be collaterally attacked upon the lack of jurisdiction or fraud. National Surety Co. v. Mulligan, 105 N.J.L. 336, 341 (E. & A. 1929). The Act, however, does not expressly include fraud as a basis for a declination of full faith and credit. Unless fraud can be equated with a lack of "reasonable notice and opportunity to be heard," it would appear that the Act would mandate giving a fraud-induced order full faith and credit.
Happily, the court has the guidance of In re Estate of Neuwirth, 155 N.J. Super. 410, 382 A.2d 972 (Cty.Ct. 1978). Therein, Judge Lane found that fraud could be a basis for denying full faith and credit to a foreign decree by comparing it to the defrauded party's "opportunity to be heard." It was held that a claim of fraud which will potentially disarm a foreign order must consist of a "denial of a reasonable opportunity to be heard." The court also added a requirement that the denial of the opportunity to be heard "must be one which would be entertained by the foreign court which rendered the judgment." Id. at 420, 382 A.2d 972, (citing Zelek v. Brosseau, 47 N.J. Super. 521, 136 A.2d 416 (App.Div. 1957), aff'd, 26 N.J. 501, 141 A.2d 17 (1958); Puzio v. Puzio, 57 N.J. Super. 557, 155 A.2d 115 (App.Div. 1959)).
Judge Lane's opinion answered convincingly and affirmatively the question of whether a party's fraudulent conduct may be included within the concept of "notice and opportunity to be *492 heard." Obviously, it cannot be presumed that Congress' choice of words was based upon a holding of a New Jersey trial court. But certainly, Judge Lane's view is consistent with the Supreme Court's approach to the Full Faith and Credit Clause.[9] Whether it is fraud, or notice of the suit, or lack of jurisdiction over the person or the subject matter, the court has indicated that full faith and credit need not be given if a party has not received "notice of the proceedings and an opportunity to be heard." Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). Undoubtedly the similar phrasing of the Act was meant to convey the intent of Congress that the presence of fraud can be a basis for refusing to give an order full faith and credit. See, e.g., State v. Federanko, 26 N.J. 119, 129, 139 A.2d 30 (1958) (a legislature is assumed to be familiar with existing law).

(b) Should This Court or the Florida Court Resolve the Fraud Issues?
Neuwirth also directs that the sufficiency of the alleged fraud as a means for undermining a foreign order is to be resolved by resort to the laws of that foreign state. Again, this is consistent with the Act. The Act mandates the application of the law of the state whose court issued the order in a proceeding "to establish, modify or enforce," or in a proceeding to interpret, a child support order.
The preferable avenue for an attack on the Florida order leads to the court in Florida. The Florida court is in a far better position to determine whether its laws would permit the setting aside of its own order than a New Jersey court unfamiliar with Florida law. Also, neither party will be prejudiced since they have consented to the Florida court's exercise of jurisdiction in the *493 recent past.[10] Noteworthy, too, is the Florida court's express reservation of jurisdiction to modify or enforce the order.
In short, the Act states that whether the Florida order was "made consistently" with the Act depends upon whether defendant had "reasonable notice and opportunity to be heard." What the Act does not explain, but this court held above, is that fraud can be a basis for a finding of a lack of "reasonable notice and opportunity to be heard". However, whether defendant was defrauded in this case cannot be said until the surrounding fact disputes are resolved; moreover, whether the alleged fraud is sufficient to warrant a setting aside of the order is a matter to be resolved by Florida law. All these issues are better resolved by the parties' return to the Florida court which issued the order.[11]
Accordingly, until such time as the Florida order is set aside by a Florida court, the court's unwitting modification was unwarranted and will be vacated.[12]
NOTES
[1] In fact, it is entitled "Joint Stipulation and Agreed Order."
[2] The December 6 order directed the appropriate probation department to provide a verification of the outstanding arrearages, and required plaintiff to pay that amount within 14 days of such verification.
[3] "Child support" is defined by the Act as "a payment of money, continuing support, or arrearages ..." (Emphasis added.)
[4] A "child support order" is one which requires, among other things, the payment of child support "in periodic amounts or in a lump sum." The Florida order certainly fits that definition.
[5] The Act was also enacted because "the laws by which the courts of different jurisdictions determine their authority to establish child support orders are not uniform." Congress no doubt had in mind the various interpretations of the Uniform Reciprocal Enforcement of Support Act (URESA) emanating from the states (New Jersey's URESA is set forth at N.J.S.A. 2A:4-30.24 to -30.64). One need look no further than the comprehensive opinion in Rimsans v. Rimsans, 261 N.J. Super. 214, 618 A.2d 854 (App.Div. 1992), which canvassed the conflicting views of the states, and the "imperfect statutory language in URESA," to appreciate the need Congress felt to bring order to this multi-jurisdictional problem. Id. at 229, 618 A.2d 854.
[6] Subsection (e) states in full:

A court of a State may make a modification of a child support order with respect to a child that is made by a court of another State if 
(1) the court has jurisdiction to make such a child support order; and
(2)(A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any contestant; or
(B) each contestant has filed written consent to that court's making the modification and assuming continuing, exclusive jurisdiction over the order.
(Emphasis added.)
[7] In his lengthy certification of October 19, 1994, plaintiff refers to a "November 1993 Settlement", ¶ 19, but nowhere indicates that it formed the basis for the Florida order. The Florida order was not expressly mentioned until plaintiff's counsel wrote to the court to object to the form of the order submitted by defense counsel after the court issued its oral opinion on the prior motion.
[8] Qui tacet, consentire videtur ("He who is silent is supposed to consent").
[9] Article IV, Section 1, of the United States Constitution states:

Full faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.
[10] Defendant indicated during oral argument that she anticipates that enforcement of any monetary relief this court may provide can only be obtained in Florida. Thus, defendant presently anticipates further legal proceedings in Florida notwithstanding this court's ruling.
[11] The circumstances upon which an order will be set aside on fraud or perjured testimony grounds are far from clear in New Jersey. Cf. Shammas v. Shammas, 9 N.J. 321, 330, 88 A.2d 204 (1952); Gilgallon v. Bond, 279 N.J. Super. 265, 272, 652 A.2d 753 (App.Div. 1995). The parties made no attempt to guide this court through New Jersey law on this subject and, more importantly, made no attempt to provide any guidance as to how the Florida courts would view the present application. Again, it is the latter question which is germane, and it is an issue better resolved by the Florida court.
[12] The other issues raised by the parties were resolved in the remaining portion of this opinion which were unnecessary to include in the published portion of this opinion.