12 N.J. Super. 5 (1951)
78 A.2d 719
JAMES N. GREAVES AND RUTH M. GREAVES, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
GEORGE FOGEL, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 22, 1951.
Decided February 13, 1951.
*6 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Charles S. Moore argued the cause for the appellants (Messrs. Moore, Butler & McGee and John C. Shipley, attorneys).
Mr. Bertram M. Saxe argued the cause for the respondent.
The opinion of the court was delivered by JACOBS, S.J.A.D.
This is an appeal from a judgment entered in the Chancery Division dismissing the plaintiffs' complaint pursuant to opinion reported in Greaves v. Fogel, 9 N.J. Super. 301 (1950).
The plaintiff James N. Greaves is the adopted son of the decedent James Greaves. He was born in Pennsylvania in 1906, lived since infancy with the decedent and his wife who were domiciled in Pennsylvania, and was adopted by the decedent in 1920, after his wife's death, by formal decree entered in the Common Pleas Court of Delaware County, Pennsylvania. Pursuant to this decree the plaintiff acquired, under the law of Pennsylvania, "the rights of a child and heir" of the decedent. In 1947 the decedent died intestate without children other than his adopted son. In 1948 the plaintiffs agreed to sell to the defendant certain real property located in New Jersey and owned by the decedent at the time of his death. Question was raised as to whether plaintiffs had title *7 to the property under New Jersey law and they instituted action for specific performance. The Chancery Division dismissed their complaint on the sole ground that it felt constrained to follow the decision of Vice-Chancellor Church in Frey v. Nielson, 99 N.J. Eq. 135 (Ch. 1926), to the effect that a child adopted in a foreign state does not inherit New Jersey land upon the death of his adopting parent intestate.
In Dayton v. Adkisson, 45 N.J. Eq. 603 (Ch. 1889), Vice-Chancellor Pitney dealt with the right of a child to inherit New Jersey land where it appeared that he had been born to Pennsylvania domiciliaries who later married and thereby legitimated his birth under the law of Pennsylvania. He recognized that the courts of England, with reliance upon the so-called statute of Merton, had denied such right under similar circumstances (Birtwhistle v. Vardill, 7 Cl. & Fin. 895 (H. of L. 1840)), but declined to accept their views, preferring those to the contrary expressed by Chief Justice Gray in the leading case of Ross v. Ross, 129 Mass. 243 (1880). Cf. In re Bowdoin's Estate, 87 N.J. Eq. 368, 369 (E. & A. 1917). He stressed the fact that many persons with lawfully adopted and legitimated children come to us from foreign states and lands and that it would be neither just nor desirable to deny their status insofar as inheritance of New Jersey lands in concerned. His conclusion that a child duly legitimated in a state having jurisdiction over his status may inherit land in other states was in accord with the weight of American authority, at least where such legitimation was not against the public policy of the state where the land was located. See 2 Beale, Conflict of Laws, p. 966 (1935). Admittedly, there is no policy in New Jersey against such legitimation; on the contrary, our Legislature has expressly provided that children born out of wedlock shall be legitimated by the intermarriage of their natural parents and entitled to all the rights and privileges of children born during wedlock. See R.S. 9:15-1; R.S. 9:15-2. Cf. The Legitimacy Act, adopted in England in 1926. 16 & 17 Geo. 5, c. 60, § 8.
In Frey v. Nielson, Vice-Chancellor Church declined to follow the implications of Dayton v. Adkisson and, relying *8 upon the English authorities, held that a child adopted under the law of New York could not inherit land in the State of New Jersey. He cited Hood v. McGehee, 237 U.S. 611, 59 L.Ed. 1144 (1915), where the court held that Alabama being the "sole mistress of the devolution of Alabama land by descent" was not obliged under the full faith and credit clause of the United States Constitution to permit a child adopted in Louisiana to inherit Alabama land. See also Olmsted v. Olmsted, 216 U.S. 386, 54 L.Ed. 530 (1910). While this decision indicates that there is no constitutional compulsion upon a state to permit foreign adoptees to inherit local land, it in no wise curbs the power of each state to make its own determination on the basic question presented. Most American courts have determined that issue in favor of the foreign adoptee's right to inherit local land, at least where there were local adoption statutes. See Ross v. Ross, supra; McLaughlin v. People, 403 Ill. 493, 87 N.E.2d 637, 640 (1949); Beale, supra, p. 967; 1 Am. Jur. 668 (1936). Similarly, the Conflict of Laws Restatement, § 143 (1934), provides that where the status of adoption is created by a state having jurisdiction it "will be given the same effect in another state as is given by the latter state to the status of adoption when created by its own law." In this connection it may be noted that the provision in the New Jersey Adoption Act vesting an adopted child with the right to inherit upon the intestacy of his adopting parent, is similar to that of Pennsylvania. R.S. 9:3-9.
In Re Finkenzeller's Estate, 105 N.J. Eq. 44 (Prerog. 1929); affirmed, 107 N.J. Eq. 180 (E. & A. 1930), Vice-Ordinary Fielder questioned the authority of Frey v. Nielson and, although not called upon to deal with local real property, held that a child properly adopted in another state would be recognized as having "the same status as a lawful child so far as concerns the personal estate" of his adopting parent. In Dulfon v. Keasbey, 111 N.J. Eq. 223, 226 (Ch. 1932), Vice-Chancellor Backes indicated his approval of the Finkenzeller case and the prevailing American view, as expressed in 1 Wharton, Conflict of Laws, p. 569 (3d ed. 1905), that a *9 foreign adoptee "will be recognized both for the purpose of the descent of real, and the distribution of personal, property in other states or counties, at least in those whose laws provide for adoption." See Fidelity Union Trust Co. v. Potter, 8 N.J. Super. 533, 538 (Ch. Div. 1950).
Prior to 1931 the pertinent New Jersey act regulated descent of real estate in the event of intestacy where there were two or more lawful children but made no express provision where there was one child. In P.L. 1931, c. 11 (R.S. 3:3-2) this was corrected and the act now provides that where a person seized of real estate dies intestate leaving "one or more lawful children" then the real estate shall descend to the child or children. In the instant matter the respondent's position must be that this act is to be construed to exclude children of domiciliaries of our neighboring states who were lawfully adopted or legitimated under the laws of those states. We find no basis either in the statutory language or in reason for such narrow construction. Cf. In re Peddie, 20 N.J.L.J. 279 (Orph. Ct. 1897). It would seem to us to represent a provincial point of view hardly consistent with proper relations between states and their broadening policies in favor of adoption and legitimation. We are satisfied that, under the the terms of our Descent Act and consistent with judicial determinations in most American jurisdictions, the plaintiff James N. Greaves, although adopted in Pennsylvania, was a lawful child entitled to inherit the decedent's New Jersey land upon his intestacy. See Clapp, Wills and Administration, § 801 (1950).
The Chancery Division intimated agreement with the foregoing views but expressed the thought that it ought, nevertheless, follow Frey v. Nielson since it affected property rights and had not been expressly overruled during the past 25 years. We need not concern ourselves with the controversy as to when the policy supporting the doctrine of stare decisis is sufficiently weighty to justify the result that a socially undesirable determination of the court of last resort is to be perpetuated solely because of its antiquity. See Fox v. Snow, 6 N.J. 12, 14 (1950). Frey v. Nielson was a decision of the *10 Court of Chancery and represented the views of a single Vice-Chancellor which were inconsistent with those expressed earlier by another Vice-Chancellor and were shortly thereafter questioned by a Vice-Ordinary in an opinion approved by the Court of Errors and Appeals. Under the circumstances it was not entitled to the controlling weight which was given to it by the Chancery Division without regard to its reasoning and merit and, since we have reached a contrary conclusion, it may be considered overruled.
The judgment is reversed.