45 N.J. Super. 97 (1957)
131 A.2d 522
LOUISE WITT PAGE, PLAINTIFF,
v.
C. CLARK JOHNSON AND BARBARA D. JOHNSON; AND MAURICE F. CHILDS, PHILLIP JEWETT, ELIZABETH ADAMS GODBOUT, ROBERT ADAMS, MARJORIE A. MOONEY, INDIVIDUALLY AND AS REPRESENTATIVES OF THE CLASS COMPOSING THE NEXT OF KIN OF MARY EDNA PAGE, DECEASED, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided May 2, 1957.
*99 Messrs. Lum, Fairlie & Foster, attorneys for plaintiff (Mr. Vincent P. Biunno, attorney).
Mr. Ervin S. Fulop, attorney for defendants C. Clark Johnson and Barbara D. Johnson.
*100 CONFORD, J.A.D. (temporarily assigned).
In this action plaintiff seeks relief of two kinds: (1) a declaration of the marketability of her title to certain lands and premises situate in the Borough of Chatham, requiring judicial construction for the first time of one of the provisions of L. 1902, c. 92, section 4, as amended by L. 1912, c. 28 (rights of inheritance of minor adopted children), and (2) a judgment directing the defendants Johnson specifically to perform a contract with the plaintiff to purchase the said property. The Johnsons have refused to accept a conveyance on the ground that plaintiff's predecessor in title, Thelma Adams Page, inherited the property as an adopted child and that under the act cited there is a possibility of reverter of title to the "next of kin" of Edna A. Page (sometimes known as Mary Edna Page), adoptive parent of Thelma Adams Page, contingent upon the death of the latter without issue. The next of kin of Edna A. Page have been joined as a class of numerous defendants by order permitting their representation by five named members of the class. R.R. 4:36. They have failed to defend and default has been entered as against them.
The case presents no factual issues but only matters of law. The pretrial order discloses these facts. Prior to September 16, 1920 Edna A. Page, then married to Harry DeB. Page, became vested with title to the premises in question under the name Mary Edna Page. On that day there was entered a decree of the Probate Court of the County of Essex, Commonwealth of Massachusetts, effectuating the adoption by Edna A. and Harry DeB. Page of a female child under the age of 14 years thereafter known as Thelma Adams Page. The child subsequently resided with the Pages at their home in Chatham in this State.
On May 23, 1923 Edna A. Page died intestate, resident in Chatham, survived by her husband and the adopted child Thelma. A sister, Eliza I. Adams, also survived. On September 3, 1924 Harry DeB. Page married the plaintiff. By deed dated March 4, 1935 the adopted child, Thelma Adams Page, unmarried, conveyed the property here involved *101 to Harry DeB. Page and his wife, plaintiff herein. Subsequently Thelma married and she has two children. Harry died in 1953 survived by his wife, their son and Thelma. The contract of sale referred to was entered into December 31, 1954.
The nature of an estate taken by inheritance depends upon the state of the law as of the time of the death of the intestate, In re Holibaugh's Will, 18 N.J. 229, 235 (1955). The legislation here pertinent, as of 1923, when Edna A. Page died, consists of L. 1877, c. 83 (p. 123), entitled "An Act providing for the adoption of children"; L. 1902, c. 92 (p. 259), which revised the 1877 act without substantial change other than to combine it with provisions for the custody and maintenance of minors in cases of separation and divorce; and L. 1912, c. 28 (p. 53), which contains an amendment not presently material. The 1877 statute, the first in this State to deal with adoption, fixed the jurisdiction and procedure of the courts in proceedings for the adoption of minors and then declared the status and legal relations consequent upon an adjudication of adoption substantially as follows in section 4 thereof (the following verbiage being as set out in the 1912 act):
"* * * and upon the entry of such decree of adoption the parents of the child, if living, shall be divested of all legal rights and obligations due from them to the child, or from the child to them; and the child shall be free from all legal obligations of obedience or otherwise to the parents; and the adopting parent or parents of the child shall be invested with every legal right in respect to obedience and maintenance on the part of the child as if said child had been born to them in lawful wedlock; and the child shall be invested with every legal right, privilege, obligation and relation in respect to education, maintenance and the rights of inheritance to real estate, or to the distribution of personal estate on the death of such adopting parent or parents as if born to them in lawful wedlock; provided, said child shall not be capable of taking property expressly limited to the heirs of the body of the adopting parent or parents, nor property coming from the collateral kindred of such adopting parent or parents by right of representation; and provided also, on the death of the adopting parent or parents and the subsequent death of the child so adopted, without issue, the property of such adopting deceased parent or parents shall descend to and be distributed among the next of kin of *102 said parent or parents and not to the next of kin of the adopted child; and provided also, if such adopting parent or parents shall have other child or children, then, and in that case the children by birth and by adoption shall, respectively, inherit from and through each other as if all had been children of the same parents born in lawful wedlock; * * *."
The critical language in the case at hand is that contained in the second proviso quoted. The answering defendants take the position that its effect was to create in the adopted child, Thelma, upon the death of her adoptive mother intestate, only a base or determinable fee in the realty of which Edna A. Page was seized, not a fee simple absolute, subject to the limitation that if she died without issue her surviving, the property should revert to the next of kin of her parent. If that construction is sound, the quantum of the estate inherited by Thelma Adams Page is less than absolute until it is ascertained whether she leaves issue at her death, and plaintiff has no marketable title by Thelma's deed.
Plaintiff argues, however, that the statutory proviso is intended not to qualify the quantum or quality of estate taken by the adopted child but only to govern the devolution of the title if the property is still held, undisposed of, by the child at his death intestate and without issue surviving. In this view of the statute Thelma Adams Page was empowered to convey the fee when she executed her deed to the plaintiff and to her husband in 1935 and the title tendered the defendants Johnson is good. For reasons set out hereinafter the court agrees with the position of the plaintiff.
Defendants do not dispute that the legal relationships declared by the New Jersey adoption statute are here applicable, notwithstanding that the Page adoption proceedings were consummated by the decree of a Massachusetts court. Greaves v. Fogel, 12 N.J. Super. 5 (App. Div. 1951), overruling Frey v. Nielson, 99 N.J. Eq. 135 (Ch. 1926), a result approved in Munson v. Johnston, 16 N.J. 31, 35 (1954).
*103 Defendants rely upon Assmann v. Friedman, 103 N.J. Eq. 147 (Ch. 1928). There a suit for specific performance of a contract of sale of realty was instituted by a vendor whose grantor, as in the case sub judice, had inherited the property as an adopted child. The defense, as here, was that the title was defective because of the alleged statutory contingent reverter. The court held that the construction of the statute was a matter of doubt and it denied relief, applying the rule that "specific performance will not be enforced where there is doubt in the mind of the Court of Chancery as to the marketability of the title." Since the court did not enter upon a determination of the legal issue, its action is a precedent only in respect of the scope of the equitable remedy, not as to the correct construction of the statute. And so far as concerns the remedy the situation at hand is distinguishable in that here there is, in addition to the demand for specific performance, a demand for relief by way of declaration of rights in respect to the title, pursuant to N.J.S. 2A:16-53 (substantially identical with section 2 of the Uniform Declaratory Judgments Act), providing that "a person * * * whose rights * * * are affected by a statute * * * may have determined any question of construction * * * arising under the * * * statute * * * and obtain a declaration of rights, status or other legal relations thereunder." Since the holders of the alleged outstanding possibility of reverter have been joined as parties to this action and will consequently be bound by the judgment, a determination that the title is marketable and ordering specific performance will fully protect the purchaser. Consequently, the reason generally assigned for refusing specific performance where there is a doubt as to the marketability of the title to property contracted to be sold, and for declining to render an adjudication of the title question in such an action, is not here properly applicable. See Hardy v. Johnson, 12 N.J. Super. 268, 272 (Ch. Div. 1951); cf. Weissbard v. Potter Drug & Chemical Corp., 6 N.J. Super. 451, 455 (Ch. Div. 1949), affirmed on the opinion below, 4 N.J. 115 (1950). The *104 present situation presents a particularly felicitous occasion for application of the increasingly liberalized view of the appropriate scope of judicial relief by way of declaratory judgment. See Abbott v. Beth Israel Cemetery Association of Woodbridge, 13 N.J. 528, 542, 543 (1953). The imaginative procedural approach embraced here by the plaintiff permits the settlement in a single action of the question of title to the property and the legal relations of the vendor and purchaser consequent upon the contract.
Defendants also stress the amendment of the statute after the Friedman decision by L. 1930, c. 89 as indicative of a legislative construction of the act as it theretofore stood in accord with the position they advance. The amendment changed the third proviso to read as follows:
"* * * and provided also, on the death of the adopting parent or parents and the subsequent death of the child so adopted, without issue and without having disposed of the property, real or personal, coming to him on the death of the adopted parent or parents during his lifetime, by deed or by his last will and testament, the property of such adopting deceased parent or parents shall descend to and be distributed among the next of kin of such parent or parents and not to the next of kin of the adopted child. It being the intention, however, that such adopted child shall have the right during his lifetime to dispose of any property, real or personal, coming to him from his adopted parent or parents absolutely and in the same manner as though the same had been acquired by purchase;" (Italics indicate the terms added by the 1930 amendment.)
The amendment expresses explicitly what plaintiff says was previously clearly implicit. Defendants urge that a "purposeful alteration of the existing law must be attributed to the legislature." Ordinarily this is a valid canon of construction. Magierowski v. Buckley, 39 N.J. Super. 534, 554 (App. Div. 1956). But here the amendatory action seems more logically imputable to a desire by the Legislature to resolve the doubt expressed by the court in the Friedman case only two years before. This view is somewhat supported by the circumstance that the bill which became the 1930 amendatory act was accompanied by a statement of the sponsor that the bill was "for the purpose of clarifying the right of disposition of real estate by an adopted child."
*105 Although it does not help resolve the problem of construction before the court, it will be informative to bring the subsequent history of the legislation down to date. As amended in 1930 the statute was incorporated into the Revised Statutes of 1937 as R.S. 9:3-9. In 1953 all of chapter 3 of Title 9 was repealed and a wholly new adoption act for minor children was adopted as L. 1953, c. 264. (See N.J.S.A. 9:3-30) This provides, in effect, that in applying the intestate law an adopted child shall have the same rights of inheritance as if born to the adopting parent in lawful wedlock; and that in construing any subsequent will or other document an adopted child shall be deemed lawful issue of the adopting parent unless the document provides otherwise. Thus, the problem which engages us here becomes obsolete as to rights of inheritance from adopting parents whose death occurs subsequent to the effective date of the 1930 act. It will apparently continue to be involved, however, in cases where the person adopted is an adult, as the entirely independent statute there applicable, N.J.S. 2A:22-1 et seq., stemming from L. 1925, c. 99 (R.S. 2:39-1 et seq.), contains a provision essentially the same as that here mooted from section 4 of the 1877 and 1902 statutes. N.J.S. 2A:22-3.
A persuasive clue to the legislative intent in respect to the disputed proviso is afforded by a consideration of the practical effect of an acceptance of defendants' construction. The proviso applies to both real and personal property, and, since no one can ever be certain that he will die leaving issue surviving, that view of the statutory intent would, in practical effect, reduce the interest of the adopted inheriting child to a possessory life interest in the property. Indeed, from another aspect of defendants' argument, the adopted child never gets more than a life estate since, even if his issue survive him, it is of course the issue who take, and, under defendants' theory of the intent of the proviso, by statutory limitation over, not by descent. Suppose the estate were personal property and the adopted child needed to sell it in part or in whole or to use it (where in the form of cash) *106 for maintenance. Whether we regard his interest in the property as absolutely defeasible upon death without issue, or as being only a possessory life interest, such disposition of the corpus would be legally precluded. It is difficult to believe that such was the legislative intent in a statute whose general purpose was, as stated therein, to invest an adopted child with every legal right and privilege in respect to the adopting parent, including rights of inheritance of realty and distribution of personalty, "as if said child had been born to them in lawful wedlock," with only the exceptions already noted. See In re Book's Will, 90 N.J. Eq. 549, 552, 553 (E. & A. 1919). If, then, the act contemplates that the adopted child inheriting personalty may dispose of it absolutely during his lifetime and that the contingency of death without issue affects only the devolution of such of it as remains undisposed of by the child during life or by will, there is no basis in the statute for deriving a different result in the case of realty. The proviso lumps realty and personalty together.
The position contended for by defendants assumes a legislative intent in 1877 to create, in effect, as to realty inherited by adopted children, a species of estate in tail, an anachronism in view of the then already ancient legislative hostility to such feudal estates manifested by the act of 26 August 1784, which limited devises in tail to the life of the first devisee in tail, after which the estate was to become a fee simple (and see L. 1934, c. 205, R.S. 46:3-15, abolishing estates tail). Such a result would appear to accomplish a constriction of the legislative beneficence in favor of adopted children not consistent with what our courts have described as the "broadening policies" of the states "in favor of adoption * * *." Greaves v. Fogel, supra (12 N.J. Super., at page 9).
The statutes relating to wills, descent, distribution and adoption must be read together as in pari materia, Commercial Trust Co. of N.J. v. Adelung, 136 N.J. Eq. 37, 44 (Ch. 1944), affirmed 137 N.J. Eq. 541 (E. & A. 1945). If this is done there is discerned in the disputed *107 proviso of section 4, as indeed in the section as a whole, a legislative policy merely to control intestate descent of property to, through and from adopted children in such manner as to keep inheritances in the blood line of the ancestor with whom the estate originated. As will be seen, this policy is not peculiar to the case of adopted children but is also reflected in other provisions of the statute of descent. See Den ex dem. Lloyd v. Urison, 2 N.J.L. 197 (Sup. Ct. 1807), for the origins of this policy in New Jersey. Note that section 4 of the Adoption Act precludes a taking (patently by descent on intestacy) by the adopted child of property coming from the collateral kindred of the adopting parent by representation. While it is true that the same proviso, in disqualifying such a child from taking property expressly limited to the heirs of the body of the adopting parent, is creating a rule of construction of wills or grants rather than ordaining descent, yet a cognate policy lies behind it and there is no more intrusion here than elsewhere in the section of the idea of fixing or qualifying the nature of the estate taken by the adopted child. He takes all or nothing.
Examples of the stated policy in the former descent act were many and of long standing. (The point of construction being made is not affected by the fact that there were wide changes in the statutes of descent and distribution effective January 1, 1952 through the enactment of N.J.S. 3A:4-1 to 3A:4-12). R.S. 3:3-7 provided for inheritance by siblings of the half blood or their issue when there were none of the whole blood or their issue eligible to take, subject to the proviso that if the lands came to the intestate from an ancestor, any not of the blood of the ancestor should be excluded. So also, while a surviving spouse took precedence over all but issue, this applied only to realty "purchased" by the decedent during coverture. R.S. 3:3-4. Realty was allowed to "descend" to a parent  contrary to the common law  but not when the inheritance came to the decedent by descent, devise or gift from a parent who predeceased him. R.S. 3:3-6. Again, while R.S. 3:3-8 *108 provided for inheritance to collaterals nearest in consanguinity, yet if the inheritance came to decedent by descent, devise or gift from an ancestor collaterals not of the blood of the ancestor were excluded.
What is significant in this review is that none of these provisions for keeping an inheritance in the blood line of the purchasing ancestor, whether in the statute of adoption or the statute of descent, purported to bear on the quantum of estate held during the lifetime of the owner. They had only to do with the identification of those who should inherit the estate when the owner died seized and intestate. Viewing the disputed proviso of section 4 of the Adoption Act against the background of the cognate provisions both in the Descent Act and the Adoption Act, the deduction of an entirely concordant purpose and intent in the former is forcefully impelled. It has been authoritatively recognized, as recently as In re Wehrhane, 23 N.J. 205, 209 (1957), that section 4 of the 1902 act concerns "the effect of a decree of adoption upon rights of inheritance" and that "this statute deals with capacity to inherit." Nothing in the history, purpose or spirit of the act supports the notion that the stated characterization is not fully descriptive of the disputed proviso.
The only shred of support for defendants' position lies in a narrowly literal reading of the proviso. But statutes cannot be read in a vacuum void of relevant historical and policy considerations and related legislation. It is not "`the words of the law, but the internal sense of it that makes the law.'" Valenti v. Board of Review of U.C.C. of N.J., 4 N.J. 287, 292 (1950); Alexander v. N.J. Power & Light Co., 21 N.J. 373, 378 (1956). The absurdity possible by an aseptically literal reading of the proviso in question is heightened if we take the phrase therein, "on the death of the adopting parent or parents," as literally as defendants read the remainder. Unquestionably implicit is the condition that the parent die intestate seized of the property, and defendants would not challenge it even though it does not come through upon a merely *109 literal reading. A statute often speaks as plainly by inference, and by means of the purpose which underlies it, as in any other manner. Alexander v. N.J. Power & Light Co., supra (21 N.J., at page 379).
The court thus arrives at the settled conclusion that Thelma Adams Page inherited a fee simple absolute in the realty, subject of this action, upon the death of her adoptive parent Edna A. Page in 1923, and was legally empowered to pass the fee by her subsequent conveyance in 1935 to Harry DeB. Page and Louise Witt Page, his wife, and plaintiff herein. Consequently, plaintiff can convey good title to the defendants Johnson free of any claim now or hereafter of the other defendants, the next of kin of Edna A. Page.
Judgment may be submitted declaring the rights of the parties agreeably to this opinion and commanding the defendants Johnson specifically to perform their contract of purchase. No costs.