ANDREW, J.T.C.
In this local property tax case plaintiff, State of New Jersey, by the Commissioner of Transportation (State) challenges, only *530 in part, the imposition of rollback taxes pursuant to the Farmland Assessment Act of 1964, (the act), N.J.S.A. 54:4-23.1 et seq., by the Warren County Board of Taxation.
On January 8, 1986 the State, in an exercise of its power of eminent domain, acquired 33.71 acres of agricultural land in the Township of Pohatcong known and designated as Block 78, Lot 5Q FARM on the township’s tax map. Inasmuch as the property had been preferentially valued, assessed and taxed under the provisions of the act and the State had no intention of continuing to use the parcel for agricultural purposes, the township applied to the Warren County Board of Taxation pursuant to N.J.S.A. 54:4-23.8, -23.9 and -63.12 et seq. for the assessment of additional or rollback taxes. The county board entered judgment imposing rollback taxes for the tax years of 1983, 1984 and 1985.
The parties to this action agree that since a change in use occurred in 1986 the judgment of the county board is in error with regard to the rollback tax assessment for 1983. See Eagle Plaza Assocs. v. Voorhees Tp., 6 N.J.Tax 582, 593 (Tax Ct.1984). The parties also agree that rollback taxes were properly imposed for 1984 and 1985. The present dispute arises with regard to tax year 1986, the year in which the State acquired the property and also in which, as the parties have stipulated, the change in use occurred. The State contends that it is not subject to rollback taxes for 1986 on the basis that N.J.S.A. 54:4-3.3b exempts it from the imposition of rollback taxes upon compliance with its terms.
N.J.S.A. 54:4-3.3b provides:
Where real property is acquired by the State or by a State agency, or by an authority created by the State, by purchase, condemnation or otherwise, such property shall become tax exempt on January 1 of the calendar year next following the date of acquisition, provided that the tax assessor of the municipality in which such property is located is given written notice of the acquisition by certified mail on or before January 10 of said calendar year next following; provided further that if real property is acquired between January 1 and January 10 inclusive and the prescribed notice is given on or before January 10, such real property shall become tax exempt as of the date of acquisition. [Emphasis supplied]
*531 The State maintains that since the property was acquired on January 8, 1986 and the requisite notice was given to the assessor on the same date, the property was tax exempt for 1986, and therefore the rollback statute, N.J.S.A. 54:4-23.8, directs only the imposition of rollback taxes for 1984 and 1985.[1]
On the other hand, Pohatcong asserts first, that the State did not meet the notice-to-the-assessor requirement in a timely manner and thus the property was not tax exempt for 1986; and second, assuming timely notice, “the Legislature intended the State to pay rollback taxes for the years in which the change in use occurred, [stipulated to be] 1986, and for the two years immediately preceding, 1985 and 1984.”
Pursuant to R. 8:8-1(b) the parties have agreed to have this matter decided on stipulated facts which are as follows:
1. On November 7, 1985, James V. Hyde, Jr., Director of Right of Way, New Jersey Department of Transportation, signed a Declaration of Taking as to 33.71 acres of farmland designated as Block 78, Lot 5Q FARM and owned by Russell E. Cole located in Pohatcong Township, Warren County, New Jersey, for the construction of State Highway Route 78.
2. That Declaration of Taking was filed in the Superior Court of New Jersey on January 7, 1986.
3. On January 8, 1986, the State of New Jersey, by the Commissioner of Transportation, deposited with the New Jersey Superior Court $442,700 as estimated compensation for the property being acquired and damages, if any, to the remaining property owned by Cole.
4. On January 7, 1986, the State of New Jersey, by the Commissioner of Transportation, served a copy of the Declaration of Taking as to the subject lands on the Tax Assessor for the Township of Pohatcong by forwarding same to him certified mail, return receipt requested, at the Pohatcong Township Municipal Building, Municipal Drive, Springstown, P.O. Box 35, R.D. 1, Phillips-burg, New Jersey 08865. The cover letter accompanying the copy of the Declaration of Taking informed the Township that the enclosed Declaration of Taking was the Township’s notice of the State’s acquisition pursuant to N.J.S. A. 54:4-3.3b. The certified mail containing the notice described above was delivered to Gloria Babirak, the Pohatcong Township Deputy Clerk, and she signed the return receipt on January 8, 1986. John Woolaver, Pohatcong Township Tax Assessor, who is employed part time, received the foregoing *532 notice on January 13,1986, which is evidenced by his stamp marked “Received”, which appears on the notice document and envelope.
5. In January 1986 Ms. Babirak was Deputy Township Clerk and she was authorized to accept certified mail for township officials.
6. The State of New Jersey acquired the subject property, pursuant to its powers of eminent domain, on January 8, 1986.
7. At the time of its acquisition the property acquired by the State was receiving a farmland assessment.
8. In August 1986 the Township of Pohatcong filed a complaint with the Warren County Board of Taxation naming the State as a defendant and seeking rollback taxes on 32.71 acres of the property acquired by the State. The Township had deducted one acre from the State’s total acquisition for the land affiliated with the former owner’s farm house.
9. The Township’s complaint sought rollback taxes for the tax years 1986, 1985 and 1984.
10. The complaint set forth the following amounts as assessments and taxes:
Tax Year Assessed As Farmland Regular Assessment Difference Applicable Tax Rate Am’t of Tax
1986 $7,098 $129,074 $121,976 3.68 $4,427.73
1985 7.098 129.074 121.976 3.91 3,891.03
1984 7.098 129.074 121.976 3.15 3,842.24
11. On September 8, 1986 the Warren County Board of Taxation, by unanimous decision, entered judgment for the Township assessing rollback taxes for the tax years 1985, 1984 and 1983.
12. The State does not challenge the rollback tax assessment for the tax year 1984 and stipulates to taxes due in that year in the amount of $3,842.24.
13. The State does not challenge the rollback tax assessment made for the tax year 1985 and stipulates to taxes due for that tax year in the amount of $3,891.03.
14. The property acquired by the State changed to a non-farmland use in 1986.
15. The township makes no claim for rollback taxes in the tax year 1983 or for prior tax years.
16. If this court decides that rollback taxes are assessable in the tax year 1986, the State stipulates that the amount of rollback taxes due for the tax year 1986 is the amount set forth by the Township in its complaint to the Warren County Board of Taxation, which amount is $4,427.73.
The State’s argument, as noted earlier, is relatively straightforward and simply asks this court to apply the applicable statutes as written. Specifically, the State asserts that it sent, by certified mail, and the assessor received, notice of the State’s *533 acquisition of the property at issue on January 8, 1986. Therefore, pursuant to N.J.S.A. 54:4-3.3b the subject property was exempt from local property taxation for 1986. As such it was not valued, assessed and taxed under the Farmland Assessment Act and thus, in accordance with the N.J.S.A. 54:4-23.8 rollback taxes cannot be assessed for the year of the change in use, 1986.[2]
Initially, Pohatcong’s response raises the issue as to whether the notice prescribed in N.J.S.A. 54:4-3.3b was timely “given.” It claims that the tax assessor did not receive the State’s notice of acquisition until Monday, January 13, 1986, when it was stamped as “received” by the assessor. Since the assessor did not “receive” timely notice the property was not tax exempt for 1986 but rather was valued, assessed and taxed as farmland and therefore a rollback assessment for 1986 is proper.
As the stipulation shows, the Pohatcong Township deputy clerk received and signed for the letter giving notice to the assessor regarding the acquisition of the property at issue on Wednesday, January 8, 1986. The deputy clerk was fully authorized to accept certified mail for township officials. That notice was not actually received by the assessor—a part-time employee—until the following Monday, January 13, 1986, when the notice and envelope were stamped “received.”
Under these circumstances, I find that the assessor was “given” notice of the State’s acquisition on January 8,1986. To allow defendant’s assertion that the assessor was not “given [timely] written notice” pursuant to N.J.S.A. 54:4-3.3b, because he did not actually receive the notice until January 13, 1986, to defeat the claimed exemption would be inconsistent with the rationale behind service by mail. See N.J.A.C. 18:15-3.3(c) which provides that the filing of an application for farmland *534 assessment is timely if it “was committed for delivery to the United States Postal Service ... within the time for filing,” and Szczesny v. Vasquez, 71 N.J.Super. 347, 177 A.2d 47 (App.Div. 1962) wherein that court held that a required notice may be effectively given if properly mailed, regardless of its receipt. See also Amodio v. Civil Service Comm., 81 N.J.Super. 22, 194 A.2d 512 (App.Div.1963) where the court found that service of notice by mail, when authorized, is deemed complete when deposited in the post office, properly addressed and with the proper amount of postage. Cf. Waite v. Doe, 204 N.J.Super. 632, 499 A.2d 1038 (App.Div.1985) (complaint in a personal injury action which was mailed to Clerk of the Superior Court 15 days before running of limitations period was presumptively received by clerk prior to running of period and timely filed where it was apparently lost by clerk after its arrival but before its docketing).
If notice by certified mail which is actually received by one fully authorized to do so on behalf of the assessor does not constitute the “giving [of] written notice” until the assessor gets around to opening it, the result would lead to an utter mockery of the purpose of notice statutes. Accordingly, I conclude that the property in question became tax exempt on January 8, 1986 pursuant to N.J.S.A. 54:4-3.3b.
It would seem that if the property were, in fact, tax exempt for 1986 then an imposition of rollback taxes for 1986 would be improper pursuant to N.J.S.A. 54:4-23.8 and the administrative code reference relative to N.J.S.A. 54:4-23.8 found in N.J.A.C. 18:15-7.5. The statute provides in pertinent part:
When land which is in agricultural or horticultural use and is being valued, assessed and taxed under the provisions of this act, is applied to a use other than agricultural or horticultural, it shall be subject to additional taxes, hereinafter referred to as rollback taxes, in an amount equal to the difference, if any, between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had the land been valued, assessed and taxed as other land in the taxing district, in the current tax year (the year of change in use) and in such of the 2 tax years immediately preceding, in which the land was valued, assessed and taxed as herein provided.
*535 If in the tax year in which a change in use of the land occurs, the land was not valued assessed and taxed under this act, then such land shall be subject to roll-back taxes for such of the 2 tax years, immediately preceding, in which the land was valued, assessed and taxed hereunder. [N.J.S.A. 54:4-23.8; emphasis supplied]
The administrative code reference to N.J.S.A. 54:4-23.8 states in pertinent part:
(a) If a change in use of the land occurs in a tax year when the land was not assessed and taxed under the Act, then such land becomes subject to roll-back taxes for such of the two tax years immediately preceding in which the land was assessed under the Act.
1. Example: A parcel of land was assessed under the Act for the tax years 1976 and 1977, but not for 1978. A change in use occurs in June 1978. The land is subject to roll-back taxes for the tax years 1976 and 1977 but is not subject to roll-back taxes for 1978 inasmuch as the land was not assessed under the Act for such tax year. [N.J.A.C. 18:15-7.5]
The State asserts that inasmuch as the subject property was tax exempt in 1986, “it was not valued, assessed and taxed under the Farmland Assessment Act and therefore, pursuant to the provisions of N.J.S.A. 54:4-23.8, no rollback taxes, can be assessed against the property for the tax year 1986.” In response, Pohatcong contests the State’s assertion that the land at issue was not valued, assessed and taxed under the Farmland Assessment Act in 1986. According to defendant, “[t]his statement is simply untrue,” because the subject property was being assessed as farmland while it was owned by Russell E. Cole prior to the State’s acquisition and that assessment continued until there was a change in use by the State in 1986.
Thus, Pohatcong, relying upon the same rollback statute, N.J.S.A. 54:4-23.8, as does the State, insists that the imposition of rollback taxes for 1986 is proper. Pohatcong places emphasis on the following statutory language in the first section of N.J.S.A. 54:4-23.8:
When land which is in agricultural or horticultural use and is being valued, assessed and taxed under the provisions of this act, is applied to a use other than agricultural or horticultural, it shall be subject to additional taxes, hereinafter referred to as rollback taxes, ... in the ... year of change of use ... and in such of the 2 tax years immediately preceding, in which the land was valued, assessed and taxed as herein provided. [Emphasis supplied]
In contrast, the State emphasizes the second section of the same statute:
*536 If in the tax year in which a change in use of the land occurs, the land was not valued assessed and taxed under this act, then such land shall be subject to roll-back taxes for such of the 2 tax years, immediately preceding, in which the land was valued, assessed and taxed hereunder.
The issue in this proceeding is not whether the first or second section of that statute is controlling. Both sections, as noted by Judge Lario in Eagle Plaza Assocs. v. Voorhees Tp., supra, 6 N.J.Tax at 591, albeit in a somewhat different context, are perfectly consistent. If the property in question was assessed as farmland in the year of the change in use and the two preceding years, rollback is proper for three years, the year of the change in use and each of the two years immediately preceding the year of the change in use. If, however, the property was not assessed as farmland in the year of the change in use then rollback is proper for only two years, those two years immediately preceding the year in which the change in use occurred.
The difficulty in this case is that during 1986 the property in issue was both assessed as farmland and tax exempt. Prior to the acquisition by the State the land was in fact valued, assessed and taxed as farmland. The State has conceded as much when it indicated that the property only became tax exempt as of January 8, 1986, the date of acquisition. Thus, for the first seven days of 1986 the property had been valued, assessed and taxed pursuant to the Farmland Assessment Act. In light of this fact the language in the second section of the rollback provision, N.J.S.A. 54:4-23.8 is not “plain, unambiguous and capable of only one reasonable interpretation” as asserted by the State. This is due to the fact that during “the tax year in which a change in use” occurred the land was assessed under the Farmland Assessment Act albeit for only seven days. Did the Legislature intend rollback tax for the full year even though the property was not valued, assessed and taxed under the act for all but seven days of the year?
A brief review of the historical fundamentals of the farmland legislation is in order to assist in the proper interpretation of *537 the rollback provision, N.J.S.A. 54:4-23.8, in light of the exemption provision granted the State in N.J.S.A. 54:4-3.3b.
In order to encourage the retention of agriculture as an industry in New Jersey and to preserve agricultural lands this State adopted a constitutional provision and implementing legislation permitting special or preferential assessment of land actively devoted to agricultural or horticultural uses rather than at its fair market value for other purposes. N.J. Const. (1947), Art. VIII, § 1, par. 1; N.J.S.A. 54:4-23.1 et seq.; East Orange v. Livingstown Tp., 102 N.J.Super. 512, 534, 246 A.2d 178 (Law Div.1968), aff’d o.b. 54 N.J. 96, 253 A.2d 546 (1969).
The rollback feature of the constitutional provision was inserted to provide some measure of protection to a municipality against pure land speculation, i.e., to discourage short-term land speculators who hold land for other than farming purposes. Centex Homes of N.J., Inc. v. Manalapan Tp. 4 N.J.Tax 599, 607-608 (Tax Ct.1982), certif. granted 94 N.J. 517, 468 A.2d 175 (1983), remanded to App.Div. 95 N.J. 218, 470 A.2d 433 (1983) app. dism. upon stipulation (May 24, 1984).
In speaking about the rollback feature, Senator John A. Waddington, Chairman of the Governor’s Committee on Farmland Assessment, described it as “a tax deferral or recapture feature [which] ... would be predicated on the difference in assessment at the new use and at the farm use.”[3] Senate Committee on Revision and Amendment of Laws, Public Hearing on S.C.R. 16, “Taxation of Lands Used in Agriculture or Horticulture,” at 3 (April 15, 1963). Additionally, a good deal of scholarly literature involving the subject of farmland assessment consistently refers to rollback taxes as “deferred taxation.” Beattie and Ransom, Use Value Assessment: Its Causes, Its Characteristics, Its Effect, (Lincoln Institute of Land Policy, Land Policy Roundtable: Case Studies Series No. *538 302) at 6, 18 (participation in farmland assessment “defers part of tax obligation”); Gouldemans, Use-Value Farmland Assessments: Theory, Practice and Impact (1974) at 41-42 (uses “roll-back tax” synonymously with “recapture of deferred taxation”); Wagenseil, “Property Taxation of Agricultural and Open Space Land,” 8 Harv.J. on Legis. 158 (1970-1971); Dunford, “A Survey of Property Tax Relief Programs for the Retention of Agricultural and Open Space Lands,” 15 Gonz.L. Rev. 675, 685, 695 (1980); Keene, “Agricultural Land Preservation: Legal and Constitutional Issues,” 15 Gonz.L.Rev. 621 (1980).
As can readily be seen, the relevant legislative history and scholarly discussions suggest that rollback taxes are a type of tax deferral and not a penalty. Preferential farmland assessment defers that part of the local property tax obligation equivalent to the difference between the amount of tax which would have been payable under regular assessment and the amount actually paid under preferential assessment. The rollback tax is intended to do nothing more than put a taxing municipality in exactly the same position it would have been in were it not for the farmland assessment during the two years of preferential assessment prior to, and also in, the year of the change of use. Thus, whatever regular local property taxes the municipality would have received during those three years, were it not for farmland assessment, it will receive through a combination of taxes assessed pursuant to farmland assessment and the taxes to be received as a result of the rollback provisions for the same years.
In this case it is obvious that the municipality, Pohatcong, is asking for more than it would have received had the land not been assessed according to the Farmland Assessment Act. The State offers an example which illustrates this point.
Suppose that regular property taxes for Property A are $100,000 for each of the tax years 1986 and 1987. Suppose further that on January 1, 1987 the State acquires Property A and forwards the required notice to the municipality in which Property A is located so that the property becomes tax emempt as of January 1, 1987. The municipality would be due $100,000.00 in taxes for 1986 but no taxes would be due for 1987.
*539 Now suppose the owner of Property A applied for and received a farmland assessment for the tax years 1986 and 1987 and that the taxes due were $10,000 in each year. Again suppose the State acquired the property on January 1, 1987 and gives the proper notice to the municipality for tax exempt status. If the municipality can assess rollback taxes for both 1987 and 1986, and assuming that the amount of the tax in 1987 is the difference between the amount that the regular tax would have been ($100,000.00) and the amount that the farmland tax would have been ($10,000.00), then the municipality would be due $100,000 in taxes for 1986 and another $90,000 for 1987 or a total of $190,000.00 which is $90,000 more than the municipality would have received if Property A had never been granted a farmland assessment.
Thus, Pohatcong would in this case, be receiving local property taxes in the form of rollback taxes for the full tax year of 1986 even though the property at issue was exempt from taxation for 1986 (not for the entire year of 1986 but from the date of acquisition of January 8,1986, see n. 1 supra) pursuant to N.J.S.A. 54:4-3.3b. This does not accord with the original purpose of rollback taxes as a method of deferred taxation or a recapture of tax that would have been secured had it not been for the preferential farmland assessment.
Pohatcong insists that the property in question was assessed as farmland for 1986 and thus rollback must apply for that year inasmuch as it was the year of the change in use as was stipulated by the parties. This was true at the original assessment date, i.e., October 1 of the pretax year, here, October 1, 1985 for tax year 1986. See N.J.S.A. 54:4-23 which establishes the usual assessment date, and thus the taxable status date for local property tax purposes.[4] Here, however, that assessment and assessment date were changed by operation of N.J.S.A. 54:4-3.3b which specifically enables the State or a state agency to acquire a tax-exempt status for local property tax purposes *540 subsequent to the usual assessment date of October 1 of the pretax year.
Thus, in this case, the subject property was not valued, assessed and taxed pursuant to the Farmland Assessment Act for the full year of 1986 but only for the first seven days of that year. On January 8, 1986 because the State had complied with the statutory requisites of N.J.S.A. 54:4-3.3b the property was tax exempt. As such, the municipality is entitled to the full taxes it would have received had the property not been assessed as farmland. Here, that can only be full taxes for the first seven days of January 1986. Thereafter, the property was tax exempt and to impose rollback taxes for the period of January 8, 1986 to December 31, 1986 would violate the provisions of the tax exemption granted in N.J.S.A. 54:4-3.3b.
Properly construed, there is no inconsistency in the meaning of the tax-exemption provision of N.J.S.A. 54:4-3.3b and the rollback tax provision of N.J.S.A. 54:4-23.8. If these statutes are read together, the only reasonable conclusion is that the subject property was tax exempt as of January 8, 1986 and was valued, taxed and assessed as farmland only from January 1, 1986 to January 8, 1986 and therefore, Pohatcong is entitled to the full tax it would have received for that period (a combination of the farmland assessed tax and the rollback tax for the seven-day period).
Pohatcong also bases its claim for the imposition of rollback taxes for 1986 on the opinion of the Appellate Division in N.J. Turnpike Auth. v. Tp. of Washington, 137 N.J.Super. 543, 350 A.2d 69 (App.Div.1975), aff’d 73 N.J. 180, 373 A.2d 652 (1977) and argues that that case is controlling. In N.J. Turnpike Auth., the turnpike authority acquired property in the Township of Manalapan for which it filed a declaration of taking in 1973. It also acquired property in the Township of Washington for which it filed a declaration of taking in 1971. The turnpike authority advanced two arguments in support of its position that rollback assessments were improperly imposed by the then Division of Tax Appeals. Initially, it argued that it was not *541 subject to rollback taxes at all because the tax-exemption provision in that case, N.J.S.A. 27:23-12, specifically granted the authority an exemption for any property acquired or used by the authority under the provisions of the turnpike authority act.
The Appellate Division rejected this argument holding that while the authority would have an exemption for future years, i.e., the years after the year in which the property was acquired it was still subject to rollback taxes because rollback taxes “involve a special situation to which that exemption statute [N.J.S.A. 27:23-12] does not apply.” Id. at 547, 350 A.2d 69. Additionally, rollback was proper because the Legislature had originally provided for an exemption from rollback taxes but repealed that exemption prior to the acquisitions by the turnpike authority. Thus, the court concluded that this repeal reflected a deliberate legislative intent that lands taken by eminent domain were not to be exempt from rollback taxes. That holding is not disputed by the State in this case. As previously noted, rollback taxes are conceded by the State to be proper for 1984 and 1985.
More important, however, to the present case was the authority’s second argument in the N.J. Turnpike Auth. case. It contended that at least part of the taxes imposed in favor of the taxing districts was erroneously assessed. It argued that as to the property in Manalapan it had acquired the right to possession of the land when it filed a declaration of taking in 1973 and, with respect to the property in Washington, it acquired the right to possession upon the filing of a declaration of taking in 1971. Its contention was that rollback taxes should have been imposed in the year that the declaration of taking was filed. That is, in Manalapan in 1973 instead of the year 1974 and in Washington in 1971 instead of 1972. The Appellate Division rejected this claim on the basis that rollback taxes are assessed in the year of the change in use rather than the year in which possession or title changes. The court indicated that there was nothing in the record to indicate that the change in use did not occur in 1974 in Manalapan and in 1972 in Washington, and *542 therefore the rollback assessments for Manalapan for the tax years 1972, 1973 and 1974 were proper and the rollback assessments in Washington for the tax years of 1970, 1971 and 1972 were proper.
The only reason that N.J. Turnpike Auth. creates any difficulty in this matter is due to the factual consequences of the court’s action, and not from any legal reasoning adopted by that court. For example, in Manalapan, the turnpike authority acquired the property at issue in 1973 when it filed its declaration of taking. The court held, however, that since the change in use did not occur until the following year, 1974, that rollback was proper for 1974. The factual difficulty is that this does not accord with the usual rule for the commencement of a tax exemption as set forth in N.J.S.A. 54:4-3.3b which is that the exemption begins on January 1 of the year following that of acquisition. Thus, if the turnpike authority acquired the Manalapan property in 1973, it would normally have become tax exempt as of January 1, 1974. This being so, there would be no tax due Manalapan for 1974, rollback or otherwise. Yet, the court said that since 1974 was the year of the change in use rollback was proper for that year. This result accords precisely with Pohatcong’s argument in this case, i.e., since 1986 was the year of the change in use, rollback is proper here for the entirety of that tax year. I do not agree with Pohatcong's argument.
In N.J. Turnpike Auth. the court’s attention was directed to the issue of whether rollback began in the year of the acquisition by the state agency or in the year of the change in use. The court, reciting the language of the rollback provisions of the Farmland Assessment Act, simply stated that “a mere change in ownership or possession [does not trigger] the imposition of roll-back taxes; it is a change in the use to which the property is applied” and thus the rollback for 1974 in Manalapan was proper. Id. at 551, 350 A.2d 69. The court’s brief opinion on this point does not reveal that anyone presented the specific issue that has been raised in this case, i.e., whether a taxing district is ^entitled to rollback taxes for a tax year in *543 which the property at issue is exempt from taxation. Thus, that case cannot be considered as a binding precedent on a legal point that was not argued in the case and not mentioned in the opinion. See Fairlawn Shopper Inc. v. Director, Div. of Tax, 98 N.J. 64, 72-73, 484 A.2d 659 (1984); West Milford Tp. v. Garfield Recreation Comm., 194 N.J.Super. 148, 158, n. 11, 476 A.2d 333, n. 11 (Law Div.1983); 20 Am.Jur.2d, Courts, § 190; 21 C.J.S., Courts, § 186; see Illinois State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 183, 99 S.Ct. 983, 989, 59 L.Ed.2d 230 (1979); cf. Page v. Johnson, 45 N.J.Super. 97, 103, 131 A.2d 522 (Ch.Div.1957).
Therefore, I conclude that N.J. Turnpike Auth. does not control the appropriate result in this case, rather what is controlling is the “breadth of the objectives of the legislation and the common sense of the situation.” Jersey City Chapter of Property Owner's etc. Ass’n v. City Council, 55 N.J. 86, 100, 259 A.2d 698 (1969). To read the rollback provisions as Pohatcong suggests does not fulfill the objective of furthering the legislative purpose of the statutes implicated in this proceeding.
Two additional points require some mention. First, Pohatcong also argues that the Legislature intended to protect “the fiscal needs of rural municipalities by requiring payment of additional taxes in the form of a rollback assessment by those who could best afford it, in this case, the State.” Whether the State can better afford the payment of the tax as opposed to Pohatcong’s ability to absorb its loss is irrelevant.[5] What is important is the purpose and intent of the relevant legislation as can be gleaned from an examination of the history of the legislation and the practical sense of the statutes when read *544 together. See AMN, Inc. v. So. Burns. Tp. Rent Leveling Bd., 93 N.J. 518, 525, 461 A.2d 1138 (1983).
Second, defendant's contention that exemption statutes are to be strictly construed against the claimant and that all forms of tax exemptions—including rollback exemptions—are not favored by the law, while usually correct, has no bearing on this case. Pohatcong has failed to note that our decisional law provides a rule of liberal construction for tax exemptions in favor of governmental entities such as the State. Walter Reade, Inc. v. Dennis Tp., 36 N.J. 435, 440, 177 A.2d 752 (1962).
In sum, I conclude that the property at issue became tax exempt as of January 8, 1986. Thus, the State has no obligation to pay any local property tax after that date to Pohatcong. For the first seven days of 1986, however, Pohatcong is entitled to receive the taxes it would have received had the property not been preferentially valued, assessed and taxed pursuant to the Farmland Assessment Act. Therefore, the State is obligated to pay the rollback taxes assessed for that seven-day period. I compute that to be $84.91 calculated as follows:
1986 regular assessment $ 129,074
Less 1986 farmland assessment 7,098
Applicable difference for entire year of 1986 $ 121,976
1986 tax rate x 3.63
Total 1986 rollback taxes $4,427.73
Total 1986 rollback taxes of $4,427.73 -j- 365 = 12.13 per day
First seven days in 1986 _x_7
Total rollback tax due for 1986 $ 84.91
The Clerk of the Tax Court is directed to enter judgment affirming the county board’s rollback tax assessment determination for 1984 and 1985, reversing its rollback tax assessment determination for 1983 and imposing a rollback tax assessment for the first seven days of tax year 1986.

The State acknowledges and concedes that inasmuch as it acquired the subject property on January 8, 1986, pursuant to N.J.S.A. 54:4-3.3b, it became tax exempt on that date, i.e., January 8, 1986 and thus, at most, it owes rollback taxes for the first seven days of 1986.

As noted in n. 1 supra, the State does concede rollback taxes for the first seven days in 1986, that period in 1986 before which the subject property became tax exempt.

The rollback provisions in the constitutional amendment and in the implementing legislation are identical. Centex Homes of N.J., Inc. v. Manalapan Tp., supra, 4 N.J.Tax at 613, n. 8.

The decisional law clearly indicates that, as of the assessment date, the assessor is to determine not only taxable value, but also taxable status. See East Orange v. Palmer, 47 N.J. 307, 320, 220 A.2d 679 (1966); Schizophrenia Found. of N.J. v. Montgomery Tp., 6 N.J.Tax 439, 442 (App.Div.1984); Shelton College v. Ringwood Bor., 48 N.J.Super. 10, 11, 136 A.2d 660 (App.Div.1957); Jabert Operating Corp. v. Newark, 16 N.J.Super. 505, 508, 85 A.2d 216 (App.Div. 1951).

Any consideration of whether defendant’s arguments present a more equitable approach to the question of rollback taxes is irrelevant to the present inquiry. It is the function of this court to enforce the legislative mandate as embodied in the statutes provided there are no constitutional constraints. Pohatcong has not presented any constitutional challenges to any of the legislation involved in this matter.